**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JUSTIN BLACK,**

        **Plaintiff,**

**v.**                                    **Case No.: 3:22-cv-00096**

**THE WEST VIRGINIA STATE POLICE, et al.,**

        **Defendants.**

_____

**NATHAN BARNETT and
PHILLIP BARNETT,**

        **Plaintiffs,**

**v.**                                    **Case No.: 3:22-cv-00203**

**CABELL COUNTY COMMISSION, et al.,**

        **Defendants.**

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending is Plaintiffs' Joint Motion to Compel Defendants Anthony Cummings, Greg Losh, Kimberly Pack, Mike Parde, and Eddie Blankenship (hereinafter the "Individual Defendants"). (ECF No. 76). The Individual Defendants have filed a response in opposition to the motion, (ECF No. 82), and Plaintiffs have submitted a joint reply. (ECF No. 87). On January 12, 2023, the parties appeared, by counsel, for a telephone conference to clarify several factual matters. The issues are now fully briefed and ready for resolution.

## I.    <u>Relevant Background</u>

In 2008, Plaintiffs were convicted for the 2002 murder of a young woman in Cabell

County, West Virginia. In 2017, Plaintiffs were exonerated through DNA testing, and their convictions were later overturned. Plaintiffs filed the instant actions in 2022, seeking damages under 42 U.S.C. § 1983. They claim that their convictions were wrongfully secured by the defendants, who allegedly fabricated evidence, coerced confessions, suppressed exculpatory and impeachment evidence, and used patently unreliable witnesses, all with reckless disregard for Plaintiffs' innocence.

In the course of discovery, Plaintiffs requested that the Individual Defendants produce a copy of all documents in their possession, custody, or control that related to the underlying homicide investigation and the prosecutions of the three plaintiffs. In response, the Individual Defendants produced, in relevant part, a copy of the case file prepared by the Cabell County Prosecuting Attorney's Office ("CCPAO") pertaining to the prosecutions of all three plaintiffs (hereinafter the "File"). Hundreds of pages of the File were heavily redacted without explanation or privilege log. Approximately a month later, after several requests from Plaintiffs, a privilege log was submitted. The log claimed that the redacted documents contained attorney work product.[1] Plaintiffs now move to compel the File in unredacted form.

Before addressing the parties' positions, it is important to understand where the File has been kept over the past twenty years, as best as can be reconstructed from the information available to the Court. At the telephonic conference, the undersigned was informed that Plaintiffs filed a state habeas proceeding at some point after their convictions were affirmed. During the pendency of the habeas proceedings, the Cabell County Prosecuting Attorney, who oversaw Plaintiffs' murder prosecutions, was elected

---

[1] The log also asserted attorney-client privilege; however, that privilege has since been abandoned.

to the position of Circuit Judge in Cabell County. Thereafter, the original File was transferred in its entirety to the Wayne County Prosecuting Attorney, who had been appointed as a special prosecutor. The habeas proceedings concluded sometime between 2017 and 2019, but the original File remained stored at the Wayne County Prosecuting Attorney's Office. When asked during the telephone conference, none of the parties was aware of any instructions having been given, or any request having been made, by the CCPAO for the return of the File at the conclusion of the habeas proceedings. According to the complaint filed in Mr. Black's case, the State of West Virginia finally dismissed the charges against Plaintiffs in 2021, electing not to prosecute them again; however, the original File remained in the possession of the Wayne County Prosecuting Attorney's Office. By all accounts, the CCPAO did not keep a copy of the File and made no effort to collect the original File from Wayne County.

Mr. Black filed suit against the Individual Defendants on February 2, 2022. Thereafter, counsel for the Individual Defendants contacted the CCPAO and requested a copy of the File. Counsel was told that the File was in the possession of the Wayne County Prosecuting Attorney's Office, so counsel contacted that office. The Wayne County Prosecuting Attorney's Office provided the Individual Defendants' counsel with the original File in its entirety on April 19, 2022. No privilege was asserted at that time by either the CCPAO, or the Wayne County Prosecuting Attorney's Office, and no documents were withheld or redacted. Moreover, neither prosecutor's office required any kind of formal paperwork, such as a subpoena, before turning the original File over to the Individual Defendants' counsel. The Individual Defendants' counsel copied all of the documents in the File, and believes that the original File was probably returned to the Wayne County Prosecuting Attorney's Office, although he conceded that the original File

may still be in the possession of his law office.

In September 2022, when responding to Plaintiffs' requests for production of documents, counsel for the Individual Defendants concluded that certain portions of the File constituted the work product of the CCPAO. Accordingly, after discussing the matter with the CCPAO, counsel for the Individual Defendants asserted the work-product protection. Counsel reviewed each document in the File and redacted all of the portions that the Individual Defendants' counsel believed constituted work product. Neither the CCPAO, nor its counsel, made these redactions. To this date, there is no indication that the CCPAO has reviewed the redactions or asked for the return of the File. Moreover, even though the CCPAO is aware of the pending lawsuits and knows that Plaintiffs have requested an unredacted copy of the complete File, the CCPAO has not itself directly asserted a work-product privilege in this Court. To the contrary, the CCPAO has indicated that it does not intend to participate in the discovery dispute as Plaintiffs have not moved to compel the CCPAO to produce the disputed documents. (ECF No. 82-2 at 3). The CCPAO has advised the Individual Defendants, however, that the CCPAO does not waive it attorney-client privilege or work-product protection.

## II.   **Relevant Law**

The work-product doctrine is designed to protect documents and things prepared by or for a party in anticipation of, or secondary to, litigation. *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947). The protection provided by the doctrine extends beyond the litigation for which the materials are created, *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015) (citing *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 483 (4th Cir. 1973)), and is designed to encourage effective legal representation by removing counsels' fear that their information and

thoughts will be invaded by an adversary if counsel records them, and the records are later made available for review. *Duplan Corp.* 487 F.2d at 483–484.

Work product is generally divided into two categories: "fact work product" and "opinion work product." *Nutramax Laboratories, Inc. v. Twin Laboratories Inc.*, 183 F.R.D. 458, 462 (D. Md. 1998). Fact work product "consists of documents prepared by an attorney that do not contain the attorney's mental impressions." *In re Grand Jury Proceedings,* 401 F.3d 247, 250 (4th Cir. 2005). Opinion work product includes the "mental impressions, opinions, and legal theories" of counsel. *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1223 (4th Cir. 1976). Fact work product is discoverable by an adverse party if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Opinion work product, on the other hand, "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994).

However, this immunity from discovery can be waived. *In re Doe,* 662 F.2d 1073, 1081 (4th Cir. 1981). "Unlike the attorney-client privilege, disclosure of work product does not automatically waive the doctrine's protections." *Chase v. City of Portsmouth*, 236 F.R.D. 263, 269 (E.D. Va. 2006) (citing *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285 (D.C. Cir. 1980)). Instead, waiver occurs by actions that are "consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule.'" *In re Doe,* 662 F.2d at 1081. The Fourth Circuit explained:

> Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver.

> However, when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection. Additionally, release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection, regardless of the relationship between the attorney and the recipient of the material. In other words, to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.

*Id.* (internal citations omitted). "This ... 'common interest' doctrine is an extension of the attorney-client privilege and presupposes the existence of an otherwise valid privilege. In determining the applicability of the privilege, the focus is not on when the documents were generated but on the circumstances surrounding the disclosure of the privileged documents to a jointly interested third party." *U.S. ex rel. May v. Purdue Pharma L.P.*, No. CIV.A. 5:10-1423, 2014 WL 4960944, at *5 (S.D.W. Va. Oct. 2, 2014) (quoting *LaSalle Bank Nat. Ass'n, v. Lehman Bros. Holdings, Inc.,* 209 F.R.D. 112, 116 (D. Md. 2002)).

### III.   <u>Parties' Positions</u>

Here, there is no dispute that the redacted documents are the attorney work product of the CCPAO, which is not a party to this litigation. The privilege log identifies the documents as contemporaneous prosecutors' notes created before and during Plaintiffs' murder trials. (ECF No. 76-1). There is also no dispute that the notes were given in original and unredacted form to counsel for the Individual Defendants, who have reviewed and redacted the documents.

Plaintiffs assert four arguments in support of their motion to compel the unredacted File. (ECF No. 76). First, they argue that the Individual Defendants have no standing to assert the work product privilege, because the File was not prepared "by or for" them, as required by Fed. R. Civ. P. 26(b)(3)(A). Second, they claim that the actions

of the prosecuting attorney are directly at issue in this case, creating an exception to the protection for work product. Next, Plaintiffs contend that they have a substantial need for the fact work product, at a minimum, because contemporaneous notes are not available from other sources and are often difficult to duplicate or approximate. Finally, they assert that the CCPAO's work product privilege was waived when the File was produced to the Individual Defendants, who have interests adverse to the CCPAO in this litigation.

In response, the Individual Defendants argue that Plaintiffs' motion is untimely, because it was made beyond the thirty days permitted by the Local Rules. (ECF No. 82). Substantively, they claim that the disclosure was clearly inadvertent and, therefore, it was not done with conscious disregard of the advantage provided by work product protection. Lastly, the Individual Defendants claim that they share a common interest with the CCPAO in demonstrating that the prosecution of Plaintiffs was consistent with legal and ethical principles.

Plaintiffs reply that the  motion is timely as it was filed within thirty days of receipt of the privilege log. (ECF No. 87). They point out that the Individual Defendants did not refute Plaintiffs' position that the Individual Defendants have no standing to raise the work product privilege, as the File is not their work product, adding that the argument should therefore be considered conceded. Plaintiffs reiterate their assertions regarding substantial need and waiver.

## IV.  **Discussion**

Preliminarily, the Court disagrees that Plaintiffs' motion was untimely filed. Plaintiffs could not have filed a meaningful motion to compel until the privilege log was provided. The privilege log was supposed to be served at the same time as the discovery responses were served. Accordingly, the privilege log—which was not supplied until thirty

days after the responses—was substantially late and, technically, could have resulted in a waiver of the privilege altogether. However, in this case, the undersigned declines to find a waiver by either party based upon application of the Local Rules and will address the dispute substantively. Having considered the arguments and case law, the Court **GRANTS** the Motion to Compel for the following reasons.

To begin, this discovery dispute presents in an unusual way, because of the manner in which the work-product privilege is being asserted. Typically, the documents at issue in a dispute such as this one are the work product of a party to the lawsuit—either documents from the current litigation or from prior litigation—and the party who owns the work product asserts the privilege under Fed. R. Civ. P. 26(b)(3)(A). Occasionally, the work product belongs to a non-party who has been subpoenaed, allowing the non-party to raise the work-product protection under Fed. R. Civ. P. 45(e)(2(A). In this case, however, a party is asserting a work-product privilege over documents in its possession, which were properly requested and identified under Rule 34, but to which the party has no discernible privilege. The federal rules simply do not address such a circumstance. A review of cases in many jurisdictions failed to uncover another situation in which a party attempted to assert work-product protection over materials belonging to a non-party when the party had no personal interest in the materials, or in the information contained in the materials. Some courts have addressed how work-product protection may be extended to non-party materials that do not fall within the express provisions of the federal rules when doing so "vindicated the purposes" underlying *Hickman*, but even in those cases, it was still the owner of the work product and corresponding privilege who was asserting it. *See, e.g., Lawrence for Est. of Hoffman v. Madison Cnty.*, No. 5:13-CV-383-GFVT-REW, 2015 WL 13636281, at *5 (E.D. Ky. Feb. 24, 2015).

In this case, the Individual Defendants simply have no standing to raise a work-product privilege over the File. The File clearly was not created by or for them given that the prosecuting attorney serves the public and not any particular government agency, law enforcement officer or unit, witness, or victim. *See* Criminal Justice Standards for the Prosecution Function, Standard 3-1.3 (Am. Bar Ass'n 2017). The Individual Defendants have not claimed any personal right or interest in the materials. *Green v. Sauder Mouldings, Inc.,* 223 F.R.D. 304, 306 (E.D. Va. 2004). Indeed, they have not offered any argument to refute Plaintiffs' contention that they lack standing to assert the work-product privilege. *Blankenship v. Necco, LLC*, No. 2:16-CV-12082, 2018 WL 3581092, at *9 (S.D.W. Va. July 25, 2018), *aff'd,* 780 F. App'x 32 (4th Cir. 2019) ("The failure to respond to arguments raised in a motion for summary judgment can indicate that the non-moving party concedes the point or abandons the claim."). Therefore, the Individual Defendants' claim of privilege must fail.

In addition to the Individual Defendants' lack of standing to raise the privilege, the undersigned finds that substantial need and waiver are additional reasons to justify an order compelling production of the unredacted File. Substantial need is examined in the context of the fact work product contained in the File. Waiver is examined as it applies to both the fact and  opinion work product in the File.

Assuming, *arguendo,* that the Individual Defendants could assert the work-product privilege on behalf of the CCPAO, fact work product may still be discoverable if the Plaintiffs can show that they have a substantial need for the materials and cannot, without undue hardship, obtain the substantial equivalent by other means. The Individual Defendants contend that Plaintiffs fail to satisfy this heavy burden, because they can simply depose Judge Chiles and the other witnesses and question them about the

allegation in the complaints.

In considering whether a party has demonstrated substantial need for fact work product, the court considers "(1) [the] importance of the materials to the party seeking them for case preparation; (2) the difficulty the party will have obtaining them by other means; and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 608–09 (E.D. Va. 2010) (citation omitted). Plaintiffs argue that the prosecutor's contemporaneous notes contain information that cannot be obtained from any other source, and they cite to several cases holding that prosecutor's files often provide key information in subsequent civil rights cases based upon claims of malicious prosecution. Plaintiffs state that several of their claims turn on the specific information known to the prosecutor at the time of the trial, and some of the notes involve meetings between the prosecutor and the Individual Defendants that may provide information for impeachment. Plaintiffs' cases revolve around the quality and reliability of the evidence given to the prosecutor by the Individual Defendants, as well as the knowledge of the prosecutor prior to and during the trials.

Clearly, the prosecutors' contemporaneous notes could potentially provide information that would not be available anywhere else and for which Plaintiffs have a substantial need. What the prosecutor was told by witnesses and the Individual Defendants and when he received information are key to Plaintiffs' cases. Moreover, even though Plaintiffs can depose Judge Chiles and the Individual Defendants, it is unlikely that they can obtain the substantial equivalent of the information in the contemporaneous notes due to the passage of time. The investigation into the murders occurred between 2002 and 2008, and the trials occurred in 2008. Accordingly, more than fourteen years

have passed since the notes were prepared. Given this length of time, it is doubtful that Judge Chiles and the other witnesses can remember the details surrounding the investigation and trials with the same clarity and to the same extent as what will be recorded in the prosecutors' contemporaneous notes. *United States v. Cameron-Ehlen Grp., Inc.*, No. 13-CV-3003 (WMW/DTS), 2019 WL 1453063, at *6 (D. Minn. Apr. 2, 2019) (finding that fact work product should be produced because the party showed substantial need and an inability to obtain equivalent without undue hardship, explaining "the contemporaneous notes and memoranda are unique because they 'provide the witnesses' initial, unadorned testimony ... and reveal how the witnesses' testimony and recollections may have changed over time.' ... The passage of time alone prejudices Defendants' ability to obtain the same information by interviewing the witnesses today."); *also Childress v. City of Huntsville, Alabama*, No. CV-09-S-2489-NE, 2012 WL 12897959, at *2–3 (N.D. Ala. Sept. 6, 2012) ("Although courts often hold that a party can obtain the substantial equivalent of a witness statement by taking the witness's deposition, an exception exists when the statement was given at the time of the incident and substantial amounts of time have since passed."); *Colon v. City of New York*, No. 12-CV-9205 JMF, 2014 WL 3605543, at *2 (S.D.N.Y. July 8, 2014) (finding that affidavits prepared by the plaintiff in a wrongful conviction case should be produced despite being work product, stating "[b]ecause of the length of time that has passed, and because Defendants may wish to use these materials to impeach Plaintiff—perhaps the most critical witness in this case—the Court finds that Defendants have met their burden needed to overcome any work-product protection."); *Suggs v. Whitaker*, 152 F.R.D. 501, 508-09 (M.D.N.C. 1993) (remarking that "contemporaneous witness statements have been touted as a unique catalyst in the search for truth in our judicial process.").

Therefore, Plaintiffs can show a substantial need for the fact work product contained in the File based upon the amount of time that has passed since the murder investigation and criminal trials, combined with the unique nature of contemporaneous notes and statements.

As to opinion work product, generally Plaintiffs would not be entitled to those portions of the File. *See Washington v. Follin,* No. 4:14-cv-00416-RBH-KDW, 2016 WL 1614166 (D.S.C. Apr. 22, 2016). In *Washington,* the District Court discusses the Fourth Circuit's view of the opinion work-product privilege, emphasizing that only in the most rare and extraordinary cases may the privilege be violated. *Id.,* at *14. The District Court notes that while the Fourth Circuit has never addressed the specific issue of whether "a prosecutorial file from a terminated criminal case is discoverable in a subsequent civil rights lawsuit," a finding that the work-product privilege bars production of opinion work product in a prosecutorial file is consistent with the near absolute immunity given opinion work product by the Fourth Circuit and with at least one other district court's opinion in the Circuit. *Id.,* at *15 (citing *Owens v. Mayor & City Council of Baltimore,* No. CV 11-3295-GLR, 2015 WL 6082131, at *1 (D. Md. Oct. 14, 2015)). The District Court explains:

> Prosecutors have a legitimate expectation that they can develop legal theories and strategies, as well as communicate with law enforcement about pending criminal investigations. Subjecting a prosecutor's work product to unbridled discovery in a civil action would inevitably curtail the prosecutor's willingness to memorialize her thoughts and opinions on paper. Such an undesirable effect is precisely the reason why the United States Supreme Court recognizes the applicability of the work-product doctrine in both the civil and criminal contexts[.]

*Id.* While the *Washington* Court found the opinion work product in the prosecutorial file to be immune from discovery, *Washington* is distinguishable from the instant action, because there was no claim in *Washington* that the prosecuting attorney's office had

waived its work-product protection.

The case cited by the *Washington* court—*Owens*—bears more similarity to this case. *Owens,* 2015 WL 6082131, at *1. In *Owens,* the Court determined that the work-product privilege extended to prosecutorial files from prior criminal cases even in subsequent civil actions based on those cases. *Owens,* 2015 WL 6082131, at *1. The Court also recognized the near absolute immunity afforded to opinion work product, but added: "[T]he Fourth Circuit clearly has recognized that opinion work product protection, however exalted and immune from discovery, may nonetheless be waived." (quoting *Continental Gas Co. v. Under Armour, Inc.,* 537 F. Supp.2d 761, 771 (D. Md. 2008)). *Id.,* at *2. Finding that the prosecutor had waived a portion of the opinion work product contained in his file, the Court ordered production of the work product limited to the subject matter of the information disclosed. *Id.,* at *3.

Here, the CCPAO waived its fact and opinion work-product protection by failing to take reasonable steps to secure the prosecutors' notes when the Individual Defendants first requested the File, as well as thereafter. While it is true that the Wayne County Prosecuting Attorney's Office actually handed the original File to counsel for the Individual Defendants, the CCPAO knew that a request for the File had been made, because defense counsel originally contacted the CCPAO looking for the File. Instead of taking action at that time to secure the work product contained in the File, the CCPAO merely directed counsel to the Wayne County Prosecuting Attorney's Office. There is nothing in the record to indicate that the CCPAO instructed the Wayne County Prosecuting Attorney's Office to keep the File confidential, to withhold privileged documents, to notify the CCPAO if requests for the File were made, or to consult with the CCPAO before producing any portion of the File. It does not appear that the CCPAO made

any effort to protect its work product until the Individual Defendants raised the issue themselves in the course of responding to Plaintiffs' requests for production of documents. By that time, counsel for the Individual Defendants had already reviewed the original File, including the attorney work product, in its entirety.

The Individual Defendants argue that disclosure of the File to them did not constitute a waiver, because they share a common interest with the CCPAO; that being, to defend against claims that Plaintiffs' criminal prosecutions were malicious and unconstitutional. This argument is unpersuasive. In determining the common interest doctrine, "the focus is not on when the documents were generated but on the circumstances surrounding the disclosure of the privileged documents to a jointly interested third party." *U.S. ex rel. May v. Purdue Pharma L.P.*, No. CIV.A. 5:10-1423, 2014 WL 4960944, at *5 (S.D.W. Va. Oct. 2, 2014) (quoting *LaSalle Bank Nat. Ass'n, v. Lehman Bros. Holdings, Inc.,* 209 F.R.D. 112, 116 (D. Md. 2002)). At the time the File was given to counsel for the Individual Defendants, Mr. Black had filed his complaint. Mr. Black alleged that the Individual Defendants coerced confessions, fabricated evidence, provided false testimony to the prosecutor and at trial, and attempted to interfere with the State's ultimate decision to rectify Mr. Black's wrongful conviction after he was exonerated by DNA evidence. Mr. Black included no allegations of prosecutorial misconduct, and no claims that the prosecutor colluded with the Individual Defendants. Accordingly, based upon the allegations stated in Mr. Black's complaint, the Individual Defendants and the CCPAO did not share a common interest over the information in the File, or in the malicious prosecution case. The immediate interest of the CCPAO, on behalf of the citizens of the State of West Virginia, was to investigate the claims of malfeasance raised by Mr. Black and determine their validity. The CCPAO had a general duty to protect

14

the constitutional rights of every criminal defendant, which included preventing and punishing misconduct that could lead to wrongful convictions. The Individual Defendants, on the other hand, were only interested in defending themselves from Mr. Black's claims. Thus, in the Black case, the positions of the CCPAO and the Individual Defendants were not aligned and could, in fact, have been adverse.

In the Barnett case, the Individual Defendants and CCPAO were both accused of wrongdoing. However, as Plaintiffs point out, the materials in the File may be used by the Individual Defendants to show that the CCPAO was solely responsible for alleged *Brady* violations, or by the CCPAO to show that the Individual Defendants withheld important information from the prosecuting attorney and, therefore, were solely responsible for the alleged malfeasance and resulting wrongful conviction. Either way, the interests of the Individual Defendants and the CCPAO are not necessarily aligned in this case either.

Furthermore, by indirectly allowing the release of the original File, with no redactions, to one party in this litigation, the CCPAO substantially increased the opportunity for potential adversaries to obtain the work product. There is nothing in the record to suggest that the File was given to the Individual Defendants because they were collaborators with the CCPAO working together toward a common goal. *See, e.g. Estate of Bryant v. Baltimore Police Dept.,* 2020 WL 6363965, at *3 (D. Md. Oct. 29, 2020). No contract between the two entities has been produced showing an agreement to limit the effect of the disclosure, or to consult with each other prior to disclosing any part of the File. Communications about the work-product privilege only arose because of Plaintiffs' discovery requests and, then, it was raised by the Individual Defendants, not the CCPAO. By that time, the original File, in its entirely, had been in the possession of the Individual Defendants' counsel for nearly five months. Considering the possibility that information

15

in the File could be detrimental to the Individual Defendants, it seems patently unfair to allow their counsel the opportunity to review the materials, but then withhold them from the other parties.

The actions of the CCPAO since the release of the File has only bolstered the potential for the other parties in the instant litigation to obtain the disputed work product. As stated, when first contacted about the File, the CCPAO took no steps to retrieve the File from the Wayne County Prosecuting Attorney's Office; thus, paving the way for release of the original File. Even after counsel for the Individual Defendants contacted the CCPAO about the presence of work product in the File and the pending requests from Plaintiffs, the CCPAO still did not demand that the File, or at a minimum, the work product, be returned. Instead, the CCPAO allowed counsel for the Individual Defendants to review the work product and make redactions on behalf of the CCPAO. After the motion to compel was filed, the CCPAO was notified of the discovery dispute, yet instead of intervening in the matter, simply reiterated that it did not waive its attorney-client privilege or work-product protection. However, since it no longer had possession of the documents, the CCPAO took no action to affirmatively assert its rights in court. The CCPAO's lackluster effort in protecting its work product in this instance suggests that maintaining the privilege is not important to the CCPAO. *See Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 772–73 (D. Md. 2008) ('[The] failure to take adequate precautions to prevent an adversary from obtaining work product information warrants waiver because indifference to such a consequence indicates that protection of the immunity was not important to the person claiming the protection.") (internal markings and citation omitted). The passage of time, the circumstances of the cases, the nature of the Plaintiffs' allegations, the interest of the public in ensuring fairness in criminal

prosecutions, and the fact that one party to the litigation has already had full access to the unredacted File weigh in favor of finding that the protection has been waived, and the motion to compel should be granted.

Therefore, the Motion to Compel is **GRANTED.** The Individual Defendants shall provide a copy of the unredacted File to the other parties within **fourteen (14) days** of the date of this Order.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:**  January 25, 2023

_____
Cheryl A. Eifert
United States Magistrate Judge