IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JUSTIN K. BLACK,

                Plaintiff,

v.                                    CIVIL ACTION NO.  3:22-0096

THE WEST VIRGINIA STATE POLICE,
ANTHONY CUMMINGS,
KIMBERLY PACK,
GREG LOSH,
MIKE PARDE,
EDDIE BLANDKNSHIP, and
UNKNOWN OFFICERS OF THE WEST
VIRGINIA STATE POLICE,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss. ECF No. 15. For the following reasons, the Motion is **GRANTED**, in part, and **DENIED**, in part.

**I. BACKGROUND**

This case stems from Plaintiff Justin Black's conviction and eventual exoneration for the murder of Deanna Crawford. *See* Compl. ¶¶ 1-9, ECF No. 1. On August 8, 2002, Ms. Crawford's body was found in Cabell County. *Id*. ¶ 26. Approximately five years after the initial investigation into her murder, in January 2007, a man named Gregory Bailey provided information to Defendant Officers Anthony Cummings and Eddie Blankenship, implicating Mr. Bailey's nephew, Brian Dement, and three friends in the murder. *Id*. ¶ 29. Mr. Bailey

subsequently recorded two conversations with Mr. Dement in which he indicated he had "witnessed or participated in the crime." *Id*. ¶ 30. On January 28, 2007, Defendant Officers Cummings, Greg Losh, and Mike Parde detained and interrogated Mr. Dement. *Id*. ¶ 32-33. Mr. Dement was allegedly interrogated for nine hours, during which he provided the police with three inconsistent statements, each implicating Mr. Black and brothers Philip and Nathan Barnett in incongruent narratives of the crime. *See id*. ¶¶ 33-35, 37-38.

On January 29, 2007, Mr. Black was subjected to an allegedly coercive seven-hour police interrogation by Defendants Cummings, Losh, Parde, and Kimberly Pack. *Id*. ¶¶ 39-58. According to the Complaint, the interrogation involved providing Mr. Black with "vivid details about the crime," explaining Mr. Dement's narrative of events, falsely claiming the Barnetts had provided information against him, a polygraph test performed by Defendant Pack, telling Mr. Black he failed the polygraph test, and threatening to revoke his parole if he did not confess. *Id*. ¶¶ 39-48. Apparently believing "that if he did not falsely confess, the Defendants would not allow him to leave the station and would instead send him back to prison," Mr. Black untruthfully confessed to the murder. *Id*. ¶¶ 50-51. The statement provided by Mr. Black was allegedly guided by the Defendants using the statements provided by Mr. Dement; however, Mr. Black's confession was allegedly inconsistent with both Mr. Dement's confession and with the facts of the case. *Id*. ¶¶ 52-56. After obtaining this statement, the Defendants allowed Mr. Black to leave without arresting him. *Id*. ¶ 58.

However, about two weeks after the interrogation, Mr. Black returned to the police station and recanted his confession. *Id*. ¶ 59. Mr. Black asserts that in response, Defendant Cummings "promised that if [Mr. Black] said the Barnett brothers were guilty of the crime, then [he] would be given immunity from prosecution," but that Mr. Black refused to lie. *Id*. ¶ 61. In

May 2007, a grand jury indicted Mr. Black, Mr. Dement, and the Barnetts for the murder of Ms. Crawford. *Id*. ¶ 66. Shortly thereafter, Mr. Black was arrested. *Id*. It appears undisputed that no physical evidence ever linked Mr. Black to the murder. *Id*. ¶ 64. In fact, the Complaint asserts that DNA taken from crime scene evidence excluded all four men. *Id*. ¶ 63. Accordingly, the probable cause used to support Mr. Black's indictment and arrest was based entirely on the allegedly coerced confessions of Mr. Dement and Mr. Black. *Id*. ¶¶ 66-68. While Mr. Dement agreed to testify against Mr. Black and the Barnetts in exchange for a plea deal, he privately admitted to an investigator to fabricating all three of his statements after being subject to police coercion. *Id*. ¶¶ 70-72, 74.

Mr. Black's trial began on April 15, 2008. *Id*. ¶ 76. The Complaint alleges that Defendants Cummings and Parde falsely testified as to the nature of Mr. Black's interrogation and the veracity of Mr. Dement's statements. *Id*. ¶¶ 77-78. Furthermore, Mr. Black asserts that numerous witnesses at his trial testified that the Defendant Officers fabricated incriminatory statements which did not reflect the witnesses' answers to the Defendants' questions. *Id*. ¶¶ 78-79. Nonetheless, Mr. Black was convicted of second-degree murder and sentenced to 40 years imprisonment.  *Id*. ¶¶ 83-84.

In October 2008, Mr. Black appealed his conviction, but was denied in 2010. *Id*. ¶ 87. From 2010 to 2014, Mr. Black filed numerous *pro se* petitions and a motion for post-conviction DNA testing which requested the appointment of counsel. *Id*. ¶ 88. In April 2015, his motion for appointment of counsel was granted. *Id*. In September 2016, the Circuit Court granted Mr. Black's second request that crime scene evidence—including Ms. Crawford's pants—be tested using a method of DNA testing not available at the time of his trial. *Id*. ¶¶ 89, 92. In August 2017, the results of that testing definitively excluded Mr. Dement, Mr. Black, and the Barnetts

from the DNA profile obtained from newly discovered semen found on Ms. Crawford's pants. *Id*. ¶¶ 92-93. However, the semen DNA profile matched that of DNA initially found on cigarette butts from the crime scene. *Id*. ¶ 94. The DNA profile was run through the Federal Bureau of Investigation's Combined DNA Index System, revealing a match to convicted sex offender Timothy Smith, who was incarcerated in Ohio. *Id*. ¶¶ 92, 94.

Based on this evidence, on May 1, 2019, the Circuit Court vacated Mr. Black's conviction and granted him a new trial. *Id*. ¶ 99. On October 5, 2021, the State announced its decision to dismiss all charges against Mr. Black. *Id*. ¶ 100. The Complaint alleges that due to his wrongful incarceration, Mr. Black "has suffered tremendous damage, including psychological trauma and emotional suffering, solely because of Defendants' misconduct." *Id*. ¶ 104.

On February 22, 2022, Mr. Black filed suit in this Court. ECF No. 1. His Complaint brings eleven causes of action: Count I – Fifth Amendment Coerced Confession; Count II - Fourth Amendment Coerced Confession and False Arrest; Count III – Federal Malicious Prosecution; Count IV – Fourteenth Amendment Due Process; Count V – Failure to Intervene; Count VI – Civil Conspiracy to Deprive Constitutional Rights; Count VII – State Law Malicious Prosecution; Count VIII – Intentional Infliction of Emotional Distress; Count IX – State Law Civil Conspiracy; Count X – Vicarious Liability; and Count XI – Indemnification. On May 31, 2022, Defendants filed the instant Partial Motion to Dismiss. ECF No. 15. Plaintiff has responded (ECF No. 21), and Defendants have replied (ECF No. 17), rendering this matter ripe for the Court's adjudication.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of

the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the facts alleged in the complaint need not be probable, the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court accepts all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III. DISCUSSION

#### A.  Absolute Immunity Based on Testimony

Defendants argue that they are absolutely immune from all claims brought in the Complaint, due to Defendants Cummings and Parde's testimony at Mr. Black's trial. Defs.' Mem. Of Law in Supp. of Partial Mot. to Dismiss at 7. As a preliminary matter, the Court rejects this argument.

Government officials who testify at criminal trials have absolute immunity from liability based on their testimony in § 1983 actions. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). Likewise, adverse fact witnesses have absolute immunity for their testimony under West Virginia law. *Zsigray v. Langman*, 842 S.E.2d 716, 723-25 (W. Va. 2020). The Complaint alleges that Defendants Cummings and Parde "falsely testified" at Mr. Black's criminal trial. Compl. ¶¶ 76-77, 129, 156. Defendants assert this is the "basis" of Mr. Black's claims, and therefore argue that "all of Plaintiff's claims fail as a matter of law and should be dismissed." Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 8. The Court notes that two of the four cited allegations as to Defendants Cummings and Parde's testimony are given in the background section of the Complaint, rather than included as integral aspects of the counts brought against the Defendant Officers. *See* Compl. ¶¶ 76-77. Accordingly, the Court rejects the argument that two clauses within the factual summary of a 31-page, 179-paragraph complaint serve as the "basis" of the eleven various counts in such a significant manner as to immunize all Defendants. Paragraphs 129 and 156, however, are included in Counts III and VII, and require more nuanced consideration.

In Response, Mr. Black has agreed that "Defendants' testimony is immunized." Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 10. However, he argues that Paragraphs 129 and 156 refer to the false testimony but do not allege claims based upon that testimony. *Id*. at 9. Instead, Plaintiff avers that the Paragraphs serve only to demonstrate "Defendants' bad-faith willingness to mislead and promote a prosecution lacking in probable cause." *Id*. at 10. In support, Mr. Black cites two Fourth Circuit cases holding that "a defendant's pattern of false explanations and fabrication of evidence may be considered by a jury in determining whether a defendant inveigled or decoyed a victim" under a federal criminal

kidnapping statute, 18 U.S.C. § 1201(a). *See id*. at 10 (citing *United States v. Hughes*, 716 F.2d 234, 240-41 (4th Cir 1983); *United States v. Young*, 248 F.3d 260, 273-74 (4th Cir. 2001)).

But Counts III and VII do not allege kidnapping—they assert malicious prosecution claims under § 1983 and state law. Nor do *Hughes* and *Young* stand for the proposition that a pattern of false explanations in testimony given at a criminal trial may be considered in a subsequent civil trial. *See Hughes*, 716 F.2d at 240-41 (concerning a pattern of inconsistent statements given by a criminal defendant to police and at trial, which a jury considered in that trial); *Young*, 248 F.3d at 273-74 (same). Mr. Black does not cite any authority for the proposition that false testimony given by officers at a criminal trial may serve as the basis of a subsequent civil claim, nor is the Court aware of any authority to that end. Accordingly, the Court finds that Plaintiff may not base his malicious prosecution claims on the allegedly false testimony given by Defendants Cummings and Parde at Mr. Black's trial.

However, the Court finds that none of the counts—including Counts III and VII—is primarily grounded in the allegations of false testimony. The other counts in the Complaint do not even refer to these assertions, and Counts III and VII contain a significant amount of unrelated and plausible factual content to support Mr. Black's claims of malicious prosecution. *See* Compl. ¶¶ 124-28, 130-33, 154-55, 157-60. For example, the Counts allege that the Defendants "pursued and caused the prosecution of Plaintiff by coercing him to make [a] false confession, falsely arresting him, and supplying the prosecutor with inconsistent and fabricated statements to secure Plaintiff's indictment, with reckless disregard for whether the statements were misleading." *Id*. ¶ 154; *see also* ¶ 126. None of those allegations depends on the assertion that Defendants Cummings and Parde[1] testified falsely at Mr. Black's trial.

---

[1] Furthermore, all four cited paragraphs referring to false testimony in the Complaint refer only

Accordingly, the Court rejects Defendants argument that they are absolutely immune from all claims brought in the Complaint.

**B.  Coerced Confession Claim under the Fifth Amendment (Count I)**

Defendants have motioned to dismiss Count I for failure to state a claim. For the following reasons, this Motion is **DENIED**.

Brought pursuant to 42 U.S.C. § 1983, Count I alleges that Defendants Cummings, Losh, Pack, Parde, and the Unknown Officers "forced Plaintiff to incriminate himself falsely and against his will, in violation of his rights secured by the Fifth Amendment" via "an unconstitutionally coercive interrogation" in which they "used threats, promises, and other calculated pressure tactics to elicit an involuntary . . . false confession" which was "used to Plaintiff's detriment in a criminal case." Compl. ¶¶ 106-08. The Complaint further states that this misconduct was "objectively unreasonable and undertaken intentionally, with malice and reckless indifference to the rights of others, and with total disregard for the truth and Plaintiff's clear innocence" such that it "shocks the conscience." *Id*. ¶¶ 109-10. Accordingly, this misconduct is averred to have caused injuries including Plaintiff's "loss of liberty, mental anguish, humiliation, degradation, physical injury and sickness, emotional pain and suffering" as well as his "unjust and wrongful conviction and his wrongful loss of liberty and imprisonment." *Id*. ¶¶ 111-12.

Defendants argue that Mr. Black's coerced confession claim fails as a matter of law due to its reliance on the Fifth Amendment's due process clause, which is only applicable to the federal government, rather than the Fourteenth Amendment's due process clause, which applies to the

---

to the actions of Defendants Cummings and Parde. How their testimony could provide Defendants Pack, Losh, Blankenship, the Unknown Officers, and the West Virginia State Police with absolute immunity is unexplained and likely unexplainable.

states. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 6 (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). Additionally, Defendants argue that the Count should be dismissed as it is duplicative of Counts II and IV. *Id*. at 7. Count II is likewise brought under § 1983 but alleges Mr. Black's coerced confession and false arrest were in violation of the Fourth Amendment, rather than the Fifth. Compl. ¶¶ 113-22. Count IV asserts a violation of Mr. Black's due process rights under the Fourteenth Amendment, again pursuant to § 1983. *Id*. at ¶¶ 134-41.

In Response, Mr. Black maintains that "[e]ach Count is distinct because each invokes different constitutional rights that function protectively at every step of the process." Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 8 (citing *Mapp v. Ohio*, 367 U.S. 643, 657 (1961)). Further, Mr. Black notes that the Fifth Amendment's Self-Incrimination Clause has been incorporated against the states through the Fourteenth Amendment. *Id*. While Plaintiff acknowledges he did not include this statement of law in his Complaint, he argues that "the complaint need not use 'precise or magical words' to adequately state a claim." *Id*. (citing *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411 (4th Cir. 2014); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 447-48 (4th Cir. 2011)).

The Court agrees with Plaintiff. Admittedly, a due process claim against a state should be brought under the Fourteenth Amendment, and the Count was expressly brought under the Fifth Amendment. Compl. ¶ 106; *Dusenbery*, 534 U.S. at 167 ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). The Fifth Amendment's right against self-incrimination was incorporated via the Fourteenth Amendment to the states in 1964. *Mallory v. Hogan*, 378 U.S. 1, 6 (1964); *Stevenson*,

743 F.3d at 417 n.4. But while Mr. Black neglected to include this information in his Complaint, he need only have given "fair notice" of his claims to the Defendant. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Stevenson*, 743 F.3d at 417-18 & n.4 (4th Cir. 2014) (rejecting a very similar argument). The Court finds that Count I gave fair notice of its claim to Defendants; it detailed allegations amounting to a violation of the Fifth Amendment by a state official. Therefore, Defendants were put on fair notice of their alleged violation of the Fifth Amendment as incorporated to the state via the Fourteenth Amendment.

As to the duplicative nature of Count I, again the Court agrees with Mr. Black: each count is invoking a different alleged constitutional violation, and each may be brought without being duplicative of the others. Mr. Black alleges that Defendants' series of actions or inactions simultaneously violated several of his constitutional rights. *See* Compl. ¶¶ 106-09, 114-19, 135-37. Simply put, an assertion that the Fourth Amendment was violated does not negate an assertion that the Fifth Amendment was violated. Rather, each claim must rise or fall by its own merits. Plaintiffs often allege violations of multiple constitutional rights pursuant to § 1983 caused by the same underlying conduct. *See, e.g.*, *Dial v. Higginbotham*, No. 3:22-0316, 2023 WL 2434293 (S.D.W. Va. Mar. 9, 2023).

In their Reply, Defendants reframe their argument, stating that Count I should be dismissed because "it purports to bring a cause of action for the mere taking of Plaintiff's statement, not for the introduction of the same at trial." Defs.' Reply in Supp. of Partial Mot. to Dismiss at 1-2 (citing *Chavez v. Martinez*, 538 U.S. 760, 770 (2003)). The Court interprets this as an argument that Count I fails to plausibly state a claim as the count does not contain allegations that Defendants introduced the allegedly coerced statement at trial. However, Count I contains the following statement: "The coerced, involuntary, and false statement that the Defendants

fabricated and attributed to Plaintiff was used to Plaintiff's detriment in a criminal case." Compl. ¶ 108. The Count also alleges "loss of liberty" as an injury caused by Defendants' behavior. *Id.* ¶ 111. Furthermore, the Count incorporates all proceeding paragraphs, which include a summary of heinous behavior by the Defendants leading to the statements of Mr. Black being used against him at trial. *Id.* ¶ 105. Accordingly, while the Count does not expressly state that the Defendants caused the statement to be introduced at trial, the overall thrust of the claim and the Complaint plausibly allege that Mr. Black's Fifth Amendment rights were violated by their actions. The Court must take all plausibly alleged factual allegations as true in considering a motion to dismiss and draw any plausible inference in favor of the non-moving party.

Accordingly, the Motion to Dismiss as to Count I is **DENIED**.

### C.  Statute of Limitations Arguments

Defendants argue that Counts I, II, V, VI, VIII, IX, and X are time-barred. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 8. However, "a court may grant a 12(b)(6) motion on statute of limitations grounds only 'if the time bar is apparent on the face of the complaint.'" *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)). As a preliminary matter, the Court finds that none of the underlying conduct for Mr. Black's causes of action occurred within two years prior to the filing date, and that this timeline is apparent on the face of the Complaint. Accordingly, the Court will consider the parties' arguments as to the statutes of limitations for the counts listed above.

#### a.  42 U.S.C. § 1983 Claims

Counts I, II, V, and VI are brought pursuant to § 1983, which does not contain its own statute of limitations. To bridge that gap, courts apply the statute of limitations from the most

analogous state-law cause of action. *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 388 (4th Cir. 2014). "For § 1983 suits, that cause of action is a personal-injury suit." *Id.* (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). In West Virginia, the statute of limitations for personal injury claims is two years. W. Va. Code § 55-2-12(b).

On the other hand, the time of accrual of a cause of action under § 1983 is a matter of federal common law. *Wallace v. Keto*, 549 U.S. 384, 388 (2007); *Owens*, 767 F.3d at 388-89. Under federal common law "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action against a defendant—that is, when the plaintiff knows or has reason to know of his injury." *Owens*, 767 F.3d at 389 (quoting *Wallace*, 549 U.S. at 388) (internal quotation marks omitted). However, courts are commanded to look to the common law tort analog to determine if this "standard rule" is applicable; if the common law provides a "distinctive rule" for determining accrual, courts must consider this "refinement" in determining whether the accrual period for an analogous § 1983 claim has run. *Id.*

As all the unconstitutional conduct alleged in the Complaint admittedly occurred more than two years ago, Plaintiff has invoked the deferred accrual rule from *Heck v. Humphrey*, 512 U.S. 477 (1994), as applicable to all of his § 1983 claims. Under *Heck v. Humphrey* and subsequent cases, § 1983 claims are not cognizable where those claims are challenging the legality of a conviction, and where a favorable adjudication would result in a prisoner's release. 512 U.S. at 488; *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-58 (2019). Accordingly, if the favorable termination of a criminal case is required to pursue a claim which would otherwise be *Heck*-barred, then accrual of the cause of action is deferred until the date of that termination. *Heck*, 512 U.S. at 489-90; *McDonough*, 2156-58. The Supreme Court has recently held that a favorable termination of a § 1983 malicious prosecution claim requires only a showing that a

-12-

plaintiff's prosecution ended without a conviction, rather than an affirmative statement of innocence. *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).

The parties dispute the date on which favorable termination occurred in Mr. Black's case. Following *Thompson*, the Court finds that favorable termination in Mr. Black's case occurred on October 5, 2021, when the State announced its decision to dismiss charges brought against him for the murder of Ms. Crawford. *See* Compl. ¶ 100. Prior to *Thompson*, there was some ambiguity as to what showing was required to demonstrate a favorable termination of a § 1983 malicious prosecution claim under federal common law pursuant to *Heck*, in part due to a circuit split over the cognizability of Fourth Amendment malicious prosecution claims. *See Castellano v. Fragozo*, 352 F.3d 939, 949-53 (5th Cir. 2003) (addressing the substantive differences between the two approaches applied by circuits), *abrogated by Thompson*, 142 S. Ct. at 1338. By the time of the *Thompson* ruling, most circuits had adopted a rule whereby plaintiffs were required to demonstrate affirmative indica of innocence on the criminal record, rather than a mere termination of the case against them. *See Jones v. Clark Cnty.*, 959 F.3d 748, 763-64 (6th Cir. 2020); *Salley v. Myers*, 971 F.3d 308, 312-13 (4th Cir. 2020); *Jordan v. Town of Waldoboro*, 943 F.3d 532, 545-46 (1st Cir. 2019); *Cordova v. City of Albuquerque*, 816 F.3d 645, 650-51 (10th Cir. 2016); *Kossler v. Crisanti*, 564 F.3d 181, 186-87 (3d Cir. 2009) (en banc) (citations omitted); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004). Under this standard, logically, the favorable termination of Mr. Black's case would have occurred when his conviction was vacated on May 1, 2019, assuming affirmative indica of innocence was present at that point in the record. *See* Compl. ¶ 99. But *Thompson* abrogated these cases, holding that plaintiffs need only demonstrate an end to the prosecution against them to meet the favorable termination standard. 142 U.S. at 1335.

Accordingly, under *Thompson*, if a plaintiff's cause of action would have been barred by *Heck*, accrual will be deferred until the prosecution against them has ended. *Thompson* held that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." 142 S. Ct. at 1135. While much post-*Thompson* focus has been on the fact that affirmative innocence need not be demonstrated, *see, e.g.*, *Shrum v. Cooke*, 60 F.4th 1304, 1311 (10th Cir. 2023), the articulated standard in *Thompson* requires that the prosecution have been terminated. Although Mr. Black's conviction was vacated in May 2019, the prosecution against him was not ended until charges were dismissed on October 5, 2021. Therefore, favorable termination of his criminal prosecution for the purposes of *Heck* occurred on that date.[2]

With this framework in mind, the Court turns to examine the applicability of the statute of limitations and the time of accrual of each of Mr. Black's claims.

Count I alleges that Mr. Black's coerced confession violated the Fifth Amendment. Compl. ¶¶ 105-12. The Complaint asserts that the interrogation leading to Mr. Black's coerced confession began on January 29, 2007 and continued into the early morning of January 30, 2007. *Id*. ¶¶ 39, 51. This testimonial statement was then used against Mr. Black at trial on April 15, 2008. *See id*. ¶¶ 76-77. Thus, the latest date the Complaint alleges actionable conduct occurring in relation to this claim is April 15, 2008—well before the two-year statute of limitations under

---

[2] While *Thompson* is a malicious prosecution case, so was *Heck*. *Heck* has since been applied broadly to any § 1983 claim which would necessarily imply the invalidity of an underlying conviction. *See, e.g.*, *Griffin v. Balt. Police Dept.*, 804 F.3d 692, 695-96 (4th Cir. 2015) (applying *Heck* to a § 1983 claim Fourth Amendment claim premised on *Brady* violations). Accordingly, this Court will apply the deferred-accrual date established by the favorable termination doctrine articulated in *Thompson* to other claims raised by Mr. Black under § 1983 which would likewise have been barred by *Heck* due to a lack of favorable termination had Mr. Black raised them while incarcerated.

West Virginia law. *See* W. Va. Code § 55-2-12(b). The Court finds that there is no "distinctive rule" at West Virginia law with regards to the accrual of the analogous personal injury tort which would displace the general accrual standard of "when the plaintiff knows or has reason to know of his injury." *Owens*, 767 F.3d at 389. Moreover, both *Heck* and deferred accrual have been applied by courts to § 1983 Fifth Amendment claims. *See Tillman v. Burge*, 813 F. Supp. 2d 946, 971 (N.D. Ill. 2011) (collecting cases). As Mr. Black's conviction rested largely upon the allegedly coerced confession, his coercive interrogation claim necessarily impugns the validity of his underlying conviction. Accordingly, Mr. Black would have been subject to the favorable termination bar for his Fifth Amendment claim, and therefore, its accrual was deferred until the prosecution against him was dismissed. Defendants' Motion to Dismiss Count I is **DENIED**.

Count II alleges that Mr. Black's coerced confession and false arrest violated the Fourth Amendment. Compl. ¶¶ 113-22. Again, the Complaint asserts that the interrogation leading to Mr. Black's coerced confession began on January 29, 2007 and continued into the early morning of January 30, 2007. *Id.* ¶¶ 39, 51. Under federal law, the statute of limitations upon a § 1983 claim for false arrest in violation of the Fourth Amendment, where that arrest is followed by criminal proceedings, accrues when the claimant is arrested; "thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution." *Wallace*, 549 U.S. at 389-90 (internal citations omitted). This is due to the "distinctive rule" concerning accrual of false arrest claims at common law. *Id.* at 389. Therefore, such a claim cannot be subject to *Heck*'s deferred accrual doctrine, as at the time the claim accrued, no underlying conviction existed. *Id.* at 393. According to the Complaint, Plaintiff was arrested "shortly after" his indictment in May 2007. *Id.* ¶ 66. Applying *Wallace*, therefore, his claim accrued at that point in time and expired two years later.

In his Response, Mr. Black concedes that this claim is untimely, but asks the Court to reinterpret it as a claim for "unlawful detention." Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 15-16. In support of this argument, Mr. Black argues that his detention without probable cause occurred after criminal proceedings had begun, and cobbles together caselaw concerning the status of an unlawful detention claim as a Fourth Amendment claim. *Id*. (citing *Manuel v. City of Joliet*, 580 U.S. 357 (2017); *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019)). *Manuel* held that a claim of unlawful pretrial detention is cognizable under the Fourth Amendment. 580 U.S. at 368. However—as Defendants highlight in their briefing—*Manuel* expressly declined to address the issue of timeliness, remanding the issue of whether deferred accrual pursuant to *Heck* would be applicable to such a claim. *Id*.  at 370-73. Likewise, *Hupp* is inapposite, as it involved a claim for malicious prosecution, which is subject to deferred accrual pursuant to *Heck*. *See* 931 F.3d at 324. Moreover, Count II does not bring an unlawful detention claim—it brings a false arrest claim that Plaintiff has admitted is untimely, pursuant to *Wallace*.[3] Accordingly, the Motion to Dismiss Count II is **GRANTED**.

Count V alleges that the Defendants failed to intervene to prevent the violation of Mr. Black's constitutional rights. Compl. ¶¶ 142-46. Also known as bystander liability, this claim is dependent upon the other alleged violations of constitutional rights, and therefore would accrue at the last alleged date of unconstitutional misconduct which Defendants failed to intervene to prevent, assuming Mr. Black had knowledge of that incident at the time it occurred. *See*

---

[3] The Court notes that the allegations in the Complaint are factually similar to those in *Wallace*. Both cases involve an alleged arrest without probable cause and a coerced confession to a murder following hours of early morning interrogations. *See* 549 U.S. at 386-87. It would be absurd to find that the plaintiff in *Wallace* could have had a cognizable Fourth Amendment claim for the same allegations had he merely changed his count from "false arrest" to "unlawful detention." This is especially true, where—as Plaintiff admits—these claims have been treated identically by the Supreme Court in the past. Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 15 (citing *Wallace*, 549 U.S. at 1095; *McDonough*, 139 S. Ct. at 2159).

*Stevenson*, 743 F.3d at 417 (4th Cir. 2014) (giving the elements of bystander liability); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996) (indicating bystander liability is dependent upon underlying constitutional violations). Regardless of exactly when this would have happened—at the time of Mr. Black's interrogation, arrest, trial, conviction, etc.—it is clear on the face of the Complaint that it occurred more than two years ago. *See id*. ¶¶ 39, 51, 66, 76-77. This Opinion has already found that Mr. Black's Fifth Amendment claim is subject to deferred accrual, and Defendants have admitted that the failure to intervene claim is premised on this conduct. *See* Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 12. Furthermore, Defendants have not motioned to dismiss Mr. Black's claims in Counts III and IV, which allege violations of Mr. Black's Fourth and Fourteenth Amendment rights. *See* Compl. ¶¶ 123-41. The Court infers that Defendants have not motioned to dismiss either count in acknowledgement that these asserted constitutional violations—bringing claims of malicious prosecution and due process violations—would be timely pursuant to *Heck*. Accordingly, the Court finds that a failure to intervene claim based upon the same underlying constitutional violation would be equally subject to deferred accrual; the Motion to Dismiss Count V is **DENIED**.

Finally, Count VI alleges that Defendants were engaged in a civil conspiracy to violate Mr. Black's constitutional rights. Compl. ¶¶ 147-52. This cause of action is dependent upon the underlying alleged constitutional violations, and therefore clearly would have accrued more than two years ago; nothing in the Complaint alleges a conspiracy extending into the past two years. Courts have applied *Heck*'s deferred accrual to § 1983 civil conspiracy claims where the underlying constitutional violations claims challenge the validity of a conviction. *See, e.g.*, *Coello v. DiLeo*, 43 F.4th 346, 354-55 (3d Cir. 2022). Again, the Court has found some of Mr. Black's alleged constitutional violations to have been subject to deferred accrual—namely, his

Fifth Amendment and failure to intervene claims. Furthermore, Counts III and IV could likewise plausibly support Count VI's civil conspiracy allegations. *See* Compl. ¶¶ 123-41, 147-52. Accordingly, the civil conspiracy claim is likewise timely and the Motion to Dismiss Count VI is **DENIED** on these grounds.

### b. State Law Claims

Defendants have motioned to dismiss state-law Counts VIII, IX, and X as time-barred. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 13. Under West Virginia law,

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). The Court employs this general framework below, with due consideration to Mr. Black's deferred accrual arguments. *See* Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 24.

Count VIII alleges intentional infliction of emotional distress ("IIED"). Compl. ¶¶ 161-65. In West Virginia, IIED has a statute of limitations of two years. Syl. Pt. 5, *Courtney v. Courtney*, 437 S.E.2d 436 (W. Va. 1993). "[T]he two-year statute of limitation for personal

injuries begins to run on the date of the last extreme and outrageous conduct, or threat of extreme and outrageous conduct" which led to a plaintiff's emotional distress. *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419, 433 (W. Va. 1998). Mr. Black has alleged a variety of outrageous conduct, including the coercive interrogation, Fifth Amendment violation, and "us[ing] his coerced and false confession and other fabricated evidence to obtain [his] indictment and prosecution." Compl. ¶ 162. All of this conduct allegedly occurred more than two years before Mr. Black brought his IIED claim. *See id*. ¶¶ 39, 51, 66, 76-77. In Response, Mr. Black admits the two-year period has expired, but argues that *Heck*'s deferred accrual doctrine is applicable to his IIED claim. *See* Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 24. The West Virginia Supreme Court has previously applied *Heck* to bar a state law claim of malicious prosecution. *Goodwin v. City of Shepherdstown*, 825 S.E.2d 363, 368 (W. Va. 2019).

To prevail on his IIED claim under West Virginia law, Mr. Black must show that the Defendants' outrageous conduct either intentionally or recklessly caused him unendurable emotional distress. *See* Syl. Pt. 3, *Travis*, 504 S.E.2d 419. Here, the Complaint alleges outrageous conduct amounting to malicious prosecution as the cause of this unendurable distress. Compl. ¶¶ 162-64. Accordingly, the Court finds that Mr. Black's IIED claim would have been subject to *Heck*'s favorable termination bar had he brought the claim during his incarceration. *See Goodwin*, 825 S.E.2d at 368. Accordingly, Count VIII is subject to deferred accrual; the Motion to Dismiss is **DENIED**.

Count IX alleges state law civil conspiracy. Compl. ¶¶ 166-70. However, as Mr. Black has conceded in his Response that state law does not furnish him with a remedy for conspiracy,

the Court need not consider the timeliness of the cause of action. *See* Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 20. Accordingly, Count IX is **DISMISSED**.

Count X alleges state law vicarious liability against the West Virginia State Police for the alleged tortious actions of the employee Defendants. Compl. ¶¶ 171-73. For state law vicarious liability, the statute of limitations is determined by the underlying tortious acts of the employee. Syl. Pt. 12, *Dunn*, 689 S.E.2d 255. The Court has found above that some of the alleged tortious actions committed by the employee Defendants was timely pled. And again, the timeliness of Counts III, IV, and VII has not been disputed. Accordingly, Count X is likewise timely as to that conduct and the Motion to Dismiss is **DENIED**.

### D. Failure to Intervene Claim (Count V)

In addition to asserting that Count V is untimely, Defendants have motioned to dismiss the count for failure to state a claim. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 17-18. They argue that no constitutional violation occurred when Defendants failed to intervene during the coercive interview, as a Fifth Amendment violation only occurs when a coerced statement is used at trial. *Id*. In Response, Plaintiff reiterates that Count V is premised on more than the Fifth Amendment violation, and that Mr. Black need only plausibly plead one such instance at the current stage in the proceedings. Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 20 (citing *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CIV. CCB-13-617, 2013 WL 3776933, at *2 (D. Md. July 17, 2013)). Defendants retort that the Complaint only alleges failure to intervene as to the coercive interview, which is insufficient to support the inference that the officers had the opportunity to intervene to prevent a constitutional violation. Defs. Reply in Supp. of Partial Mot. to Dismiss at 14-16.

Count V alleges that "during the constitutional violations described [in the Complaint,] Defendant Blankenship and one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, despite having a reasonable opportunity to do so." Compl. ¶ 143. As a preliminary matter, the Court agrees with Plaintiff: this is a broad incorporation of a variety of constitutional violations alleged in the Complaint, rather than a claim premised narrowly on the Fifth Amendment violation. Accordingly, this Opinion will determine whether the Complaint as a whole plausibly alleges bystander liability as to any underlying constitutional violation.

The Complaint asserts violations of Mr. Black's Fourth,[4] Fifth, and Fourteenth Amendment rights, as well as conspiracy to commit those violations. As discussed in more depth above, the Fifth Amendment allegation includes assertions that Defendants are responsible for the introduction of Mr. Black's coerced statement at trial, as well as for the resulting loss of his liberty. *See* Compl. ¶¶ 106-12. Count III alleges malicious prosecution in violation of the Fourth and Fourteenth Amendments. Compl. ¶¶ 123-33. That claim includes allegations that Defendants Cummings and Parde "made, influenced, or participated in the decision to initiate the criminal prosecution against" Mr. Black by coercing his confession. *Id*. ¶ 125. The Defendants writ large are accused of fabricating and supplying the false and material information supporting probable cause to indict and prosecute Mr. Black. *Id*. ¶ 126. Finally, Count IV alleges violations of Mr. Black's due process rights under the Fourteenth Amendment. *Id*. ¶¶ 134-41. This allegation centers primarily upon Defendants Cummings and Parde's "fabricat[ion] of police reports and other material evidence." *Id*. ¶ 136.

---

[4] Count III alleges federal malicious prosecution under the Fourth and Fourteenth Amendments. Compl. ¶¶ 123-33. Defendants have not motioned to dismiss this claim. However, note that this Opinion has dismissed Mr. Black's additional Fourth Amendment claim as to false arrest contained in Count II, above.

The Court finds that these allegations plausibly support an inference that Defendants could be subject to bystander liability. In the Fourth Circuit, "[t]o succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer (1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act." *Stevenson*, 743 F.3d at 417 (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002)). Most obviously, Defendants Cummings and Parde are accused of working together to violate Mr. Black's constitutional rights; it is therefore plausibly alleged that each knew of the actions of the other, and that either could have reasonably intervened to prevent the harms caused to Mr. Black. *See, e.g.*, Compl. ¶¶ 51, 125, 135, 154. Further, the Complaint plausibly alleges that Defendants Pack, Losh, Blankenship, and the Unknown Officers were engaged in maliciously prosecuting Mr. Black in violation of the Fourth and Fourteenth Amendments. *See id*. ¶¶ 123-33. Taking all facts alleged as true, the Court finds that a reasonable jury could conclude that each Defendant involved in this malicious prosecution knew of the constitutional violations committed by their fellow officers and chose not to act. The allegations as to malicious prosecution are extensive and continue for years as Mr. Black progressed through the criminal justice system. *See id*. ¶¶ 32, 39-40, 51, 59, 63, 66, 76, 84. Employing its common sense and judicial experience, the Court infers that the Defendants likely had a reasonable opportunity to prevent the constitutional harms Mr. Black has alleged at some point during this lengthy process.

The Motion to Dismiss Count V is **DENIED**.

**E.  42 U.S.C. § 1983 Conspiracy Claim (Count VI)**

Count VI alleges civil conspiracy pursuant to § 1983. Compl. ¶¶ 147-52. Defendants argue

that this claim[5] is barred by the intracorporate conspiracy doctrine, as each Defendant was acting

as an agent of the West Virginia State Police at the time the allegedly unconstitutional conduct

occurred. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 18-19. Mr. Black rejoins

that "the Fourth Circuit recognizes that police officers can be held liable for conspiring with one

another to violate constitutional rights." Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.'

Mot. to Dismiss at 21 (citing *Hafner v. Brown*, 983 F.2d 570, 578 (4th Cir. 1992); *Largie v.*

*Gerres*, No. CIV. WDQ-11-2765, 2012 WL 1965450, at *6 (D. Md. May 30, 2012); *Marshall v.*

*Odom*, 156 F. Supp. 2d 525, 532 (D. Md. 2001); *Harrison v. Prince William Cnty. Police Dept.*,

640 F. Supp. 2d 688, 708 (E.D. Va. 2009)).

Under the intracorporate conspiracy doctrine, "an agreement between or among agents of the

same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."

*Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp v. Independence Tube*

*Corp.*, 467 U.S. 752, 769–771 (1984)). This is because "you must have two persons or entities to

have a conspiracy. A corporation cannot conspire with itself any more than a private individual

can, and it is the general rule that the acts of the agent are the acts of the corporation." *Nelson*

*Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S.

925 (1952). While the doctrine originally arose in the context of anti-trust actions, it has since

been applied to civil rights conspiracies brought under a variety of causes of action. *See Abbasi*,

---

[5] Defendants have also motioned to dismiss Count IX on the same grounds. Count IX alleges
state law civil conspiracy. Compl. ¶¶ 166-70. However, Mr. Black has conceded in his Response
that state law does not furnish him with a remedy for conspiracy. *See* Pl.'s Mem. of Law in Supp.
of Resp. in Opp'n to Defs.' Mot. to Dismiss at 20. Accordingly, the Count has been dismissed
above, and the Court will not address the relevant arguments here.

582 U.S. at 153 (applying the doctrine to a § 1985(3) claim); *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985) (discussing evolution of the doctrine and applying it to a § 1985(3) claim); *see also Locus v. Fayetteville State Univ.*, 870 F.2d 655 (Table), 1989 WL 21442, at *2 (4th Cir. 1989) (declining to limit application of the doctrine). Lower courts have likewise applied the doctrine to § 1983 claims involving government employees, including police officers. *See, e.g.*, *Burgess v. Balt. Police Dept.*, No. RDB-15-0834, 2016 WL 795975, at *10-11 (D. Md. Mar. 1, 2016).

However, the intracorporate conspiracy doctrine is inapplicable where either "the plaintiff has alleged that the corporate employees were dominated by personal motives" or where the employee's actions in furtherance of the conspiracy were unauthorized. *Buschi*, 775 F.2d at 1252-53. The Court finds neither exception is applicable here. The Complaint alleges and relies upon the notion that the individual Defendants were employed by the State Police and acting within the scope of their employment. Compl. ¶¶ 13-25. There are no allegations that any of the Defendants were motivated by personal animus.

Plaintiff's arguments that the Fourth Circuit has found the doctrine inapplicable to police departments are unconvincing, as none of the cases cited addressed the issue of the applicability of intracorporate conspiracy doctrine directly. *Hafner* affirmed a jury instruction concerning police officers' acquiescence for the purposes of a § 1983 conspiracy claim. 983 F.2d at 577-78. *Largie* allowed a complaint alleging civil conspiracy against police officers to survive a motion to dismiss, without addressing the issue. 2012 WL 1965450, at *6. The *Marshall* Court found no conspiracy and granted summary judgment to the police officer defendants, without addressing intracorporate conspiracy doctrine. 156 F. Supp. 2d at 532. Finally, while *Harrison* declined to dismiss a conspiracy count brought against a group of officers employed by the same police

-24-

department, again, intracorporate conspiracy doctrine was not raised or addressed. 640 F. Supp. 2d at 708. Every case the Court has found in the Circuit which directly addresses the application of intracorporate conspiracy doctrine to a § 1983 conspiracy claim involving a group of police officers has applied the doctrine. *See, e.g.*, *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004).

Accordingly, the Motion to Dismiss Count VI is **GRANTED**.

**F.  Vicarious Liability Claim (Count X)**

Count X asserts a state law vicarious liability claim against the West Virginia State Police for the alleged actions of the Officer Defendants as its agents. Compl. ¶¶ 171-73. Defendants have motioned to dismiss this claim as an improper municipal liability claim brought under § 1983. Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 19-20.

States are not "persons" for the purposes of § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). It is undisputed that the West Virginia State Police is an instrumentality of the State. Furthermore, § 1983 claims brought against municipalities may not be premised upon vicarious liability. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). Accordingly, the Court agrees that to whatever extent Count X asserts a *Monell* municipal liability claim against the West Virginia State Police, it fails as a matter of law. *See Pruitt v. W. Va. Dept. of Public Safety*, 664 S.E.2d 175, 181 (W. Va. 2008).

However, Mr. Black disavows any implied allegation of § 1983 municipal liability against the West Virginia State Police. Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 25-26. Instead, he argues that Count X states a state law claim of vicarious liability against the West Virginia State Police for the actions of the Officer Defendants, who were acting as agents of the State Police. *Id.* (citing *W. Va. Reg'l Jail & Corr. Facility Auth. V. A.B.*, 766

S.E.2d 751, 765 (W. Va. 2014)). West Virginia recognizes that the State may be liable under the principles of *respondeat superior* for the actions of State officials, in "situations wherein State actors violate clearly established rights while acting within the scope of their authority and/or employment." *A.B.*, 766 S.E.2d at 765. Further, Plaintiff cites to cases in which vicarious liability claims have been permissibly brought against the State Police. *See Pruitt*, 664 S.E.2d at 183 (allowing a vicarious liability clam premised on the actions of a State Trooper); *Krein v. W. Va. State Police*, No. 2:11–cv–00962, 2012 WL 2470015, *7-8 (S.D.W. Va. 2012) (relying on *Pruitt*).

Upon examination of *A.B.* and *Pruitt*, the Court finds that Mr. Black may bring a vicarious liability claim against the West Virginia State Police based upon the actions of the Officer Defendants. Count X is properly brought in conformance with state law and does not attempt to bring an improper *Monell* claim pursuant to § 1983. *See* Compl. ¶¶ 171-73. Defendants appear to believe that because *A.B.* requires a violation of "clearly established rights," and because Mr. Black brings additional claims regarding these rights violations under § 1983, therefore his state law claims must be converted into § 1983 claims. *See* Defs.' Reply in Supp. of Partial Mot. to Dismiss; *A.B.*, 766 S.E.2d at 765. This argument fails as a matter of logic and law. In fact, in *Pruitt*, the West Virginia Supreme Court found state law vicarious liability had been appropriately alleged against the State Police[6] where a trooper shot and killed an unarmed suspect, leading the suspect's estate to bring cognizable federal constitutional claims against the trooper and state law claims against the State Police.[7] 664 S.E.2d at 179.

Accordingly, the Motion to Dismiss at to Count X is **DENIED**.

---

[6] As noted in *Krein*, "[p]rior to 2006, the agency now known as the West Virginia State Police was known as the West Virginia Department of Public Safety." 2012 WL 2470015, at *7 n.8.
[7] *Pruitt* also rejected the application of *Monell* and § 1983 to the State Police. 664 S.E.2d at 181. Again, Mr. Black is not attempting to bring a *Monell*-based claim in Count X.

### G.  Arguments as to Collateral Estoppel

As a final matter, the Court will consider arguments raised as to the application of collateral estoppel to Mr. Black's claims. Plaintiff's Response notes that Defendants' Motion to Dismiss repeatedly invokes the trial and appellate court decisions in Mr. Black's criminal case to "mischaracterize his coerced confession as voluntary." Pl.'s Mem. of Law in Supp. of Resp. in Opp'n to Defs.' Mot. to Dismiss at 4. Accordingly, Plaintiff argues that because his conviction has been vacated, collateral estoppel cannot apply. *Id*. at 5-6.

The Court agrees. While Defendants do not openly argue that Mr. Black's confession was voluntary, they repeatedly cite his convictions to imply as much. *See* Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 2, 4 (citing *State v. Black*, 708 S.E.2d 491 (2010)). Accordingly, Plaintiff has reasonably addressed the argument in his Response. Collateral estoppel cannot preclude claims brought as to the voluntariness of a confession which supported a *vacated* conviction. *See, e.g.*, *Gilliam v. Sealey*, 932 F.3d 216, 232-33 (4th Cir. 2019). While *Gilliam* relied on North Carolina law's requirement that a judgment to be valid to have preclusive effect, the Court finds that West Virginia law's similar requirement equally precludes use of Mr. Black's conviction. *See id.*; *State v. Miller*, 459 S.E.2d 114, 120 (W. Va. 1995) ("[C]ollateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a *valid* judgment to which such determination was essential to the judgment.") (emphasis added). Furthermore, Defendants have not responded to Plaintiff's arguments concerning their implied application of collateral estoppel. *See* Defs.' Reply in Supp. of Partial Mot. to Dismiss. Regardless, the Court finds that to whatever extent the Motion asserts collateral estoppel bars Mr. Black's involuntary confession claims, the Motion is **DENIED**.

-27-

## IV. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss (ECF No. 15) is **GRANTED**, in part, and **DENIED**, in part. The Motion is **DENIED** as to Counts I, V, VIII, and X. However, the Motion is **GRANTED** as to Counts II and VI. Further, the Plaintiff has acknowledged that Count IX is improperly brought; the Court **DISMISSES** Count IX. Finally, to whatever extent the Motion argues that absolute immunity based on the officers' testimony bars any of the Counts brought in the Complaint or that collateral estoppel bars Plaintiff's claims, the Motion is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:          March 28, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE