**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JUSTIN BLACK,**

        **Plaintiff,**

**v.**                                                    **Case No.: 3:22-cv-00096**

**THE WEST VIRGINIA STATE POLICE, et al.,**

        **Defendants.**

_____

**NATHAN BARNETT and**
**PHILLIP BARNETT,**

        **Plaintiffs,**

**v.**                                                    **Case No.: 3:22-cv-00203**

**CABELL COUNTY COMMISSION, et al.,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant West Virginia State Police's Motion for a Protective Order, (ECF No. 89), and Plaintiff Black's Motion to Compel Defendant West Virginia State Police to Designate and Produce Rule 30(b)(6) Deposition Witness(es). (ECF No. 90). For the reasons that follow, the Court **GRANTS** the Motion for Protective Order and **DENIES** the Motion to Compel.

**I.**   **Relevant Background**

In 2008, Plaintiffs were convicted for the 2002 murder of a young woman in Cabell County, West Virginia. In 2017, Plaintiffs were exonerated through DNA testing, and their convictions were later overturned. Plaintiffs filed the instant actions in 2022, seeking

damages under 42 U.S.C. § 1983. They claim that their convictions were wrongfully secured by the defendants, who allegedly fabricated evidence, coerced confessions, suppressed exculpatory and impeachment evidence, and used patently unreliable witnesses, all with reckless disregard for Plaintiffs' innocence.

On August 22, 2022, Plaintiff Black served his first set of interrogatories and requests for production of documents on the West Virginia State Police ("WVSP"). (ECF Nos. 36, 37) Of relevance to the instant motions, Black asked the WVSP to produce complaints made against the individual state troopers named as defendants herein, as well as documents relating to allegations of various types of wrongdoing by the troopers, regardless of whether official complaints were filed. (ECF No. 89-1 at 18-30). The WVSP served responses to the discovery requests on October 12, 2022. (ECF Nos. 43, 44). In the responses, the WVSP produced portions of the troopers' personnel files and concurrently advised Black that there may have been other responsive documents that existed in the past, but those documents could have been "destroyed in compliance with the West Virginia State Police's Professional Standard Section's record retention policy, which requires the Section to maintain such files for a period of four (4) years following resolution of any such investigations. *See* WV C.S.R § 81-10-6-6.1." (ECF No. 89-1 at 18-30). According to the parties, Black did not question the WVSP about its records retention policy or the possibility of destroyed documents at that time.

Black served the WVSP with a second set of interrogatories and requests for production of documents, as well as requests for admission on February 14, 2023. (ECF Nos. 53, 54). This discovery focused on the process of lodging complaints against troopers in general, specific complaints filed in 1996 against individual troopers, documents related to the underlying criminal case, and complaints against the defendant troopers.

(ECF Nos. 89-3, 89-4). On March 10, 2023, this Court amended the Scheduling Order, in relevant part, extending the discovery deadline from April 24, 2023 to July 14, 2023. (ECF Nos. 19, 62). The WVSP responded to Black's second set of discovery requests and requests for admission on March 16, 2023. (ECF Nos. 66, 67). In the responses, the WVSP repeated that some responsive documents may have existed in the past, but were purged in compliance with the WVSP's record retention policy, which only required that such files be maintained for four years following resolution of any investigation. (ECF No. 89-3 at 14-22).

On March 23, 2023, Black's counsel wrote to defense counsel challenging some of the objections asserted to the second set of discovery requests. (ECF No. 89-5). For the first time, Black's counsel questioned the WVSP's interpretation of WV C.S.R. § 81-10-6-6.1 as requiring the WVSP to purge documents after four years, noting that the legislative rule was silent as to how the documents were to be handled at the end of the four-year retention period. (*Id.*) Black's counsel further argued that the WVSP had a duty to at least check to see if any documents existed related to identified complaints against the troopers and could not simply presume that documents had been destroyed because more than four years had elapsed since these complaints had been investigated. (*Id.*). Counsel requested that the WVSP confirm that no responsive documents did, in fact, exist. Counsel for the WVSP responded to the correspondence on March 29, 2023, stating that no documents existed relating to the complaints, again indicating that the files were destroyed after the requisite four-year retention period. (ECF No. 89-6).

This issue was next raised by Black's counsel in early June 2023 after the deposition of one of the defendant troopers, Kimberly Pack. (ECF No. 90 at 4). Trooper Pack testified that a complaint had been filed against her concerning her performance as

3

a polygraph examiner; however, such a complaint was not located in Trooper Pack's personnel file. (ECF No. 90 at 4-5). The record before the Court does not specify when the complaint was made or provide any additional information about the nature of the complaint, its investigation, or its resolution. However, this testimony caused Black's counsel to seek further information from the WVSP regarding its document retention policies and practices. (*Id.* at 5).

Counsel for the parties met on June 8, 2023 to discuss the matter. (*Id.*). Counsel for the WVSP maintained that documents relating to complaints and complaint investigations were destroyed four years after the investigations were concluded in keeping with WV C.S.R. § 81-10-6-6.1. Black's counsel repeated that the rule did not *require* the destruction of records. (*Id.*). After this meeting, Black's counsel conducted legal research and found rules promulgated by the West Virginia Department of Administration that set forth a procedure to be followed by state agencies when destroying state documents. (*Id.*). This procedure required the agency wishing to destroy documents to receive permission before the destruction and to keep a list of all approvals to destroy, as well as a list of all purged records, "permanently showing the history of the records series." (*Id.*) (quoting WV C.S.R. § 148-13-7.3).

On June 12, 2023, Black's counsel wrote to counsel for the WVSP summarizing their June 8 meeting and acknowledging that a reasonable and diligent search had been conducted to respond to Black's discovery requests, but questioning the WVSP's practice of destroying documents. (ECF No. 89-7). Black's counsel noted her understanding that (1) the WVSP retained documents relating to complaints for four years in compliance with WV C.S.R. § 81-10-6-6.1 and then purged the records; (2) the WVSP believed that the purging requirement was implicit in the legislative rule; and (3) the WVSP did not

4

document its destruction of records or possess such documentation. (ECF No. 89-7 at 1). Black's counsel pointed to the Department of Administration's rules—specifically WV C.S.R. § 148-13-1 *et seq.*—governing the destruction of state records and asked the WVSP to do the following: (1) detail how they searched for the documents requested by Black; (2) produce the certifications required by the Department of Administration when state documents are destroyed; (3) conduct another search for complaints against the defendant troopers; (4) release any investigative files related to the defendant troopers; and (5) provide a 30(b)(6) witness to testify on topics not yet disclosed. (*Id.* at 2). On June 16, 2023, Black filed a Notice to Take Rule 30(b)(6) Deposition, setting out eleven topics for testimony. (ECF No. 83). The time frames included for the topics were either 2007 to the present, or the time period beginning with the employment of each individual defendant trooper through the present. (*Id.*). Although the record does not reflect the employment dates of the troopers, statements contained in various filings by the parties indicate that the relevant time frames for those topics would be over twenty years.

Counsel for the WVSP responded to the June 12 correspondence on June 27, 2023. (ECF No. 89-8). Counsel advised that the Department of Administration's legislative rules did not apply to the WVSP, as it was an agency within the Department of Homeland Security. (*Id.* at 1). According to counsel for the WVSP, the record destruction procedures cited by Black's counsel governed only state records generated by the sixteen government agencies that fell under the authority of the Department of Administration. Counsel for the WVSP repeated that a thorough search had been conducted by the WVSP and all documents responsive to Black's discovery requests had been produced. (*Id.* at 2). Counsel advised that no "certifications" existed, because the WVSP was not required to obtain, create, or maintain certifications, and that no investigative files would be released

as no such files existed. (ECF No. 89-8 at 2-3). On June 30, 2023, the WVSP filed the pending Motion for Protective Order. (ECF No. 89).

In place of a response to the Motion for Protective Order, Black filed the pending Motion to Compel. (ECF No. 90). The WVSP filed a memorandum in opposition to the Motion to Compel, (ECF No. 93), and Black filed a reply. (ECF No. 94). Therefore, the issues have been fully briefed, and it does not appear that oral argument is necessary to help resolve the motions. The undersigned notes that, under the local rules of this Court, responses to discovery motions are due fourteen days after service of the motion, and replies are due seven days after service of the response. *See* L.R. Civ. P. 7.1(a)(7). Accordingly, had a normal briefing period been followed, both motions would have been filed beyond the deadline for discovery. The Motion to Compel was filed on July 3, 2023, just eleven days before expiration of the discovery deadline. Even with expedited briefing by the parties, the Motions still were not ripe until July 10, 2023—four days prior to the close of discovery.

## II.  **Motions**

### A.  *Motion for Protective Order*

Five of the eleven topics set out in the Notice of Rule 30(b)(6) deposition involve the WVSP's document retention and destruction policies, practices, and records. (Topics 1-5). Three of the topics involve complaints and records of complaints made against each of the individual troopers who are named as defendants in this case. (Topics 6-8). Two of the topics address the steps taken by the WVSP to search for documents requested in discovery and to prepare for the Rule 30(b)(6) deposition. (Topics 10 and 11). The final topic seeks information about efforts the WVSP took to identify, investigate, prevent, and discipline various types of misconduct by troopers during homicide investigations. (Topic

6

9). The WVSP asks the Court for a protective order forbidding the deposition in its entirety. (ECF No. 89 at 1). In support, the WVSP argues that Topics 1-8 and 10-11 constitute objectionable "discovery on discovery" without any justification as to why such inquiries are relevant or necessary. (*Id*. at 5-7). According to the WVSP, before a party can pursue this type of discovery, the party must show that its adversary has been acting in bad faith during the discovery process, or providing responses to discovery that are deficient. (*Id*. at 8). Furthermore, the WVSP contends that these topics have already been addressed, noting that counsel has advised Black on multiple occasions that no additional responsive documents exist and that the WVSP follows the document retention requirement set forth in WV C.S.R. § 81-10-6. (ECF No. 89 at 8). Accordingly, Black is seeking deposition testimony on documents that he knows do not exist. The WVSP asserts that the topics are likewise objectionable as cumulative and duplicative of prior requests for production of documents to which the WVSP objected. Since Black did not move to compel responses when the objections were lodged in the past, the WVSP argues that Black cannot now attempt to elicit oral testimony on those same issues. (*Id*. at 8-9). Finally, the WVSP maintains that these topics are not relevant to any claim or defense, as there is no claim that the WVSP negligently hired, trained, supervised, or retained the individual troopers, and compelling the WVSP to prepare a witness or witnesses to testify on these topics would not be proportional to the needs of the case.

As to Topic 9, the WVSP asserts that it does not state with sufficient particularity the information sought from the witness. (*Id*. at 9). Pointing out the burden placed on the agency to prepare a Rule 30(b)(6) witness, the WVSP contends that Black has a duty to designate "with painstaking specificity" the particular subject areas to be addressed. Otherwise, the agency is faced with an impossible task and compliance with the

deposition notice is unlikely. (*Id.*). The WVSP adds that, given its breadth, requiring the WVSP to offer a witness to address Topic 9 is not proportional to the needs of the case. (*Id.*).

### B. *Motion to Compel*

Black asks the Court to compel the WVSP to produce a Rule 30(b)(6) designee(s) to testify on each topic set forth in his Notice of Deposition, stating that the topics are not duplicative or cumulative, and they are quite relevant to his claims against the defendants. Black indicates that Topics 1-8 are essential in order for him to understand how the WVSP stored and destroyed prior complaints against the individual troopers involved in this case and to determine if any documentation of the destruction exists. (ECF No. 90 at 9-10). Black argues that there is a significant conflict between the Department of Administration's rules governing document retention and disposal and the WVSP's practice of purging complaints. Black seeks to depose an agency designee to "dispel the ambiguities" within the WVSP's practices and rules and "address the tensions" between the Department's rules and those of the WVSP. (*Id.* at 10). Black believes he is entitled to gather all evidence related to complaints filed against the troopers, including what complaints may have been destroyed, as they are evidence of prior bad acts under Fed. R. Evid. 404(b). Black denies that these topics are cumulative or duplicative, because he has never submitted formal discovery on this issue. (*Id.* at 11). Black disagrees that "discovery on discovery" requires a showing of bad faith, citing to cases that have held that discovery of document retention and disposition policies is not contingent upon a claim of discovery abuse or spoliation. (*Id.*). Black stresses that complaints of similar misconduct by the defendant troopers are highly relevant to his case; therefore, he should be granted an opportunity to discover whether any were destroyed, whether they were stored properly

when maintained, whether any complaints are still in storage, who had or has access to them, whether some were purged and others were not, and whether any of the defendant troopers had access to the complaints and purged the complaints themselves. (*Id*. at 12).

In regard to Topic 9, Black contends that it seeks relevant information, because the types of misconduct outlined in Topic 9 are the types alleged against the defendant troopers. (ECF No. 90 at 13). Black states that evidence showing a lack of investigation or discipline by the WVSP would be probative as to the troopers' state of mind, punitive damages, and possible impeachment. Black counters the WVSP's argument that the topic is overly broad, explaining that he does not seek testimony about "every" effort or "attempt;" rather, he just wants information about the WVSP's "general efforts to address this misconduct from 2007 through the present." (ECF No. 90 at 14).

As to Topics 10 and 11, Black states that they are not duplicative, and the WVSP has never explained how it searched for the documents it produced in discovery. (*Id*. at 15). At the same time, Black notes, the WVSP surmises that innumerable documents may have been destroyed. Consequently, Black should be able to question an agency designee on what steps were taken to locate documents and prepare for the deposition. (*Id*.).

### III.  **Standard of Review**

Parties are generally permitted to obtain discovery:

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). However, the scope of discovery can be limited by court order. *Id*.

Here, the WVSP seeks such an order pursuant to Federal Rule of Civil Procedure 26(c), which authorizes the court to issue a protective order. Rule 26(c) provides that, upon a showing of good cause, the court may issue an order protecting a party or person "from annoyance, embarrassment, oppression, or undue burden or expense" by doing one or more of the following:

> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> (E) designating the persons who may be present while the discovery is conducted;
> (F) requiring that a deposition be sealed and opened only on court order;
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c). To succeed under the "good cause" standard of Rule 26(c), a party moving to resist discovery on the grounds of burdensomeness and oppression must do more to carry its burden than make conclusory and unsubstantiated allegations. *Convertino v. United States Department of Justice*, 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden). The "party seeking a protective order has the burden of establishing 'good cause' by demonstrating that 'specific prejudice or harm will result if no protective order is granted.'" *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2003)). To insure that discovery is sufficient, yet

reasonable, district courts have "substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

As the WVSP also points outs, the district court is required to limit the frequency or extent of discovery, either on motion or *sua sponte*, if the court determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C); *See Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit the frequency or extent of use of the discovery methods otherwise permitted under the Federal Rules of Civil Procedure if it concludes that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.) (internal markings and citation omitted). Under this rule, both the relevancy and the proportionality of the proposed discovery must be assessed, taking into account the current status of the case.

As a response to the WVSP's request for a protective order, Black has filed a Motion to Compel the deposition of a Rule 30(b)(6) witness. As Black points out, protective orders are intended to be used sparingly, *Medlin v. Andrew,* 113 F.R.D. 650, 653 (M.D.N.C.1987)), and courts are especially reluctant to prevent the taking of depositions. *Minter v. Wells Fargo Bank, N.A.,* 258 F.R.D. 118, 125 (D.Md.2009). Because a protective

order's prospective relief is less suited to the fluid nature of a deposition, the need for a protective order in that context is more difficult to establish. 8 Wright & Miller, *Federal Practice and Procedure,* § 2037 (3d Ed.). Thus, the burden to show good cause under Rule 26(c) for an order prohibiting the taking of a deposition is especially heavy. *Medlin,* 113 F.R.D. at 653; *Motsinger v. Flynt,* 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.").

Even still, as stated above, Rule 26(b)(2)(C) ***requires*** that discovery not be unreasonably cumulative; duplicative; obtainable from another source that is less expensive, less burdensome and more convenient; outside the scope of Rule 26(b)(1); or could have already been obtained by the party seeking it, who had ample opportunity to do so.  Rule 26(b)(2)(c) mandates that "all permissible discovery ... be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010)). The analysis under Rule 26(b)(2)(C), while related, is separate from the analysis performed under Rule 26(c). *See, e.g., Trustees of Purdue Univ., v. Wolfspeed, Inc.*, No. 1:21CV840, 2023 WL 4316300, at *3 (M.D.N.C. July 3, 2023) ("Although Defendant lacks standing under Federal Rule of Civil Procedure 45, and has not alleged a remediable harm under Federal Rule of Civil Procedure 26(c), that does not end the inquiry. In fact, the Court retains an independent obligation under Federal Rule of Civil Procedure 26(b)(2)(C), "[o]n motion or ***on its own***, [to] limit the frequency or extent of discovery ... if it determines that ... the proposed discovery is outside the scope permitted by [Federal] Rule [of Civil Procedure] 26(b)(1).") (emphasis in original); *also Bhattacharya v. Murray*, No. 3:19-CV-00054, 2022 WL 1307093, at *6–7 (W.D. Va. May

12

2, 2022). Thus, while a party may fail to establish good cause for a protective order preventing "annoyance, embarrassment, oppression, or undue burden or expense," the court may nonetheless find that an order is necessary under Rule 26(b)(2)(C). The determination as to whether discovery violates Rule 26(b)(2)(C) rests with the district court, and district courts "have broad discretion in their resolution of discovery problems that arise in cases pending before them." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (citation and internal markings omitted).

## IV.  __Discussion__

Topics 1-5 of the Notice of Rule 30(b)(6) Deposition seek information about the WVSP's document retention and destruction policies and practices, written and unwritten, for a period in excess of sixteen years (January 2007 through the present). (ECF No. 83 at 2-3). Counsel for the WVSP has informed Plaintiff's counsel that the WVSP follows WV C.S.R § 81-10-6-6.1, which the WVSP interprets as requiring state records to be retained for four years, after which time they can be—and they are—purged. Furthermore, counsel has advised that the WVSP does not follow WV C.S.R § 148-13-1 *et seq*., because those legislative rules only apply to agencies within the West Virginia Department of Administration, and the WVSP falls under the Department of Homeland Security. Counsel has confirmed that the WVSP does not seek permission to destroy its records, does not keep track of records that are destroyed, does not have certifications related to destroyed records, and cannot recreate the history of any record series.

Courts have taken various positions on whether a party's document retention and destruction policies are a proper topic of discovery. The range of those positions is summarized in *McMorrow v. Mondelez Int'l, Inc.,* as follows:

> On one end of the spectrum, some courts permit discovery of document retention policies without any preliminary showing by the moving party of spoliation or discovery misconduct. On the opposite end of the spectrum, some courts refuse to allow discovery of document retention policies unless the movant first establishes that spoliation is a legitimate issue in the case. In the middle of the spectrum, some courts permit discovery of document retention policies without a showing of spoliation or discovery misconduct, but only in circumstances where the non-moving party has claimed that requested discovery documents are unavailable, or when there are indicia that the discovery process was not thorough, reliable, or transparent.

*Id.*, Case No.: 17-cv-02327-BAS (JLB), 2019 WL 3852498, at *3 (S.D. Cal. Apr. 19, 2019). There is no allegation that the WVSP has engaged in discovery misconduct. To the contrary, Black does not allege that any documents have been withheld by the WVSP, and Black concedes that the WVSP conducted a "reasonable and diligent" search to respond to Black's discovery requests. (ECF No. 89-7 at 1). Instead, Black disagrees with the WVSP's interpretation and application of the State's legislative rules, and seeks to explore the WVSP's document retention and destruction policies to "dispel ambiguities within the WVSP's rules and address the tension between the WVSP's rules and the Department of Administration's rules." (ECF No. 90 at 10). Put simply, the deposition is **not** intended to achieve the usual goals of discovering the WVSP's document retention and destruction policies and practices, proving discovery misconduct, or establishing the existence of additional responsive documents which are relevant to the claims and defenses in this case.

While a deposition addressing perceived ambiguities in the WVSP's document retention policy and its conflict with the Department of Administration's rules might be an interesting intellectual exercise, it is simply not proportional to the needs of the case. A deposition on document retention and destruction policies coming at the close of discovery will not assist Black in locating relevant information or further the claims or

defenses in any meaningful way. Moreover, if Black is concerned about the accuracy of counsel's representations, and wishes to have the WVSP committed to those positions, then that concern can be resolved in a more convenient, less expensive, and less burdensome way by having the WVSP provide Black with an affidavit signed by an appropriate agency representative verifying the statements made by counsel in the June 27, 2023 correspondence. (ECF No. 89-8). Therefore, the Motion for Protective Order seeking to prohibit Topics 1-5 of the Notice of Deposition is **GRANTED** pursuant to Fed. R. Civ. P. 26(b)(2(C), and the Motion to Compel a deposition on Topics 1-5 is **DENIED**. However, the WVSP is **ORDERED** to provide Black, within **fourteen days** of the date of this Order, an affidavit verifying the information provided by defense counsel regarding the WVSP's document retention and destruction practices, its lack of documentation of purged records, and its lack of additional responsive documents.

Topics 6 and 7 of the Notice seek information regarding complaints against the individual troopers named as defendants in this case. (ECF No. 83 at 3-4). The undersigned agrees with the WVSP that these topics are unreasonably cumulative and duplicative of other discovery in the action, and Black has had ample opportunity to obtain information about complaints against the individual defendants. In October 2022, the troopers' personnel records, which contained any available complaints, were provided to Black. (ECF No. 89-1 at 18-30). Black was told at that time that the WVSP purged records after four years. Given that Black sought records for a time frame in excess of twenty years, the WVSP advised that some records may have been destroyed in compliance with that policy. (*Id.*). After receiving the personnel files, Black served requests for admission on the WVSP, asking the WVSP to admit that all the complaints filed against each individual trooper was in the trooper's personnel file. (ECF No. 89-4).

The WVSP admitted the same. (*Id*.). Black deposed the individual troopers and had an opportunity to question them about complaints filed against them.[1] Counsel for the WVSP confirmed on more than one occasion that a thorough search had been conducted for complaints and documents related to complaints against the troopers, and all such existing materials had been produced to Black. In addition, counsel reiterated the document retention and destruction practices of the WVSP several times and confirmed that no records were kept by the WVSP on what documents were destroyed, when they were destroyed, and by whom they were destroyed.

Black has all of the documents related to complaints and misconduct by the defendant troopers that are available; any other documents that may have existed were destroyed without a record of the destruction, and without a description of the documents. Compelling the WVSP to interview former and current employees in an effort to recreate from memory a history of these documents, spanning more than two decades, and then requiring the WVSP to prepare a designee(s) to testify about the nonexistent records, as well as events that Black knows did not occur (such as; who requested to destroy the records, the date of the request, the reason for the request, whether the request was approved or denied) is a futile exercise that is simply not proportional to the needs of the case. Accordingly, the Motion for a Protective Order seeking to prohibit Topics 6 and 7 of the Notice of Deposition is **GRANTED** pursuant to Fed. R. Civ. P. 26(b)(2(C), and the Motion to Compel a deposition on Topics 6 and 7 is **DENIED**. The affidavit that the WVSP has been ordered to provide to Black should address any concerns

---

[1] In his brief, Black mentioned a complaint made against one trooper that was discovered during her deposition, but did not appear in her personnel file. However, Black did not provide the Court with any concrete information about this complaint; such as, the date of the complaint, whether it was investigated, or the disposition of the complaint. As such, the undersigned could not discern the significance of the complaint to Black's Motion to Compel.

Black may have about the existence of complaints and documents relating to complaints.

Likewise, allowing Black to conduct a deposition on Topic 8 would be disproportional to the needs of the case. Topic 8 would again require the WVSP to prepare a witness or witnesses to discuss the investigations surrounding all claims of misconduct lodged against five troopers during a period of at least twenty-five years without the benefit of the investigative files, as most, if not all, of the files would have been purged given the length of time since any such investigations were resolved. In the record before the Court, the only complaints identified for further discovery by Black were lodged in 1996. (ECF No. 89-3 at 16-21). Consequently, the files pertaining to those complaints were destroyed many years ago, making it extremely difficult for the WVSP to identify a reliable witness who could speak on behalf of the agency about the specifics of those investigations. To be adequately prepared to address this topic, the WVSP would be forced to locate and interview former and current employees and witnesses and essentially recreate from their memories the investigations of each claim of misconduct.

Further, the Topic is overly broad in that it asks for testimony about ***any*** alleged misconduct by each of the individual troopers, regardless of the nature of that misconduct or its relevance to the claims in this case. The WVSP clearly should not be expected to interview dozens of current and former employees to determine if anyone can remember complaints made against the individual troopers, the circumstances surrounding the complaints, the witnesses, the documents, the results of any investigations, and the dispositions of the complaints, and then recreate the investigations in order to respond to deposition questions when the misconduct remembered is totally unrelated to the alleged misconduct in this case. Black has not shown any justification for compelling the WVSP to incur the burden necessitated by this Topic. Black has deposed the individual troopers,

17

who should have had information about the nature and disposition of any complaints against them. Yet, Black does not narrow the Topic to any particular complaints, rendering the Topic void of the particularity required of a Rule 30(b)(6) topic. Accordingly, the Motion for Protective Order seeking to prohibit Topic 8 of the Notice of Deposition is **GRANTED** pursuant to Fed. R. Civ. P. 26(b)(2(C), and the Motion to Compel a deposition on Topic 8 is **DENIED**.

Topic 9 of the Notice seeks testimony about efforts the WVSP have taken to identify, investigate, and prevent various types of misconduct during a period in excess of sixteen years (January 2007 through the present). (ECF No. 83 at 4-5). The WVSP objects to the Topic on several grounds, including that is beyond the scope of Fed. R. Civ. P. 26(b)(1), because it has nothing to do with any claim or defense in the case. The WVSP emphasizes that Black's claim against the WVSP is limited to vicarious liability; consequently, its actions are not at issue. Black attempts to circumvent this reality by arguing that the information is relevant to show the troopers' state of mind, because "if the WVSP did not properly investigate or discipline Defendants for prior misconduct, then the Defendants may have been more likely to commit the misconduct alleged in this case." (ECF No. 90 at 13). Even if that argument were persuasive—which it is not—that does not explain the time frame of the Topic. Most of the alleged misconduct of the troopers occurred in 2007; yet, the Topic seeks testimony from 2007 through 2023. How the actions of the WVSP taken after the alleged misconduct could have affected the troopers' state of mind at or before the time of the alleged misconduct is a mystery.

Additionally, Black provides no explanation for how this Topic is proportional to the needs of the case. Compelling the WVSP to interview former and current employees in order to discover *any* efforts made by the agency over a sixteen-year period to identify,

investigate, and prevent various types of misconduct, and to discipline employees for the misconduct, and then to have the WVSP designate and prepare witnesses to testify about this information is far too burdensome for the tenuous benefit Black hopes to achieve. Accordingly, as this Topic is not proportional to the needs of the case, the Motion for a Protective Order seeking to prohibit Topic 9 of the Notice of Deposition is **GRANTED** pursuant to Fed. R. Civ. P. 26(b)(2(C), and the Motion to Compel a deposition on Topic 9 is **DENIED**.

Topics 10 and 11 request a designee to testify regarding the efforts taken by the WVSP to respond to Black's document requests in this case and to prepare for the Rule 30(b)(6) deposition. Obviously, Topic 11 is moot, as the WVSP will not be required to respond to any of the substantive topics listed in the Notice of Deposition. With respect to Topic 10, this is a classic "discovery on discovery" topic. "Discovery on discovery has been broadly described by courts as any discovery seeking information regarding a party's preservation, collection, and retention efforts. Its purpose is generally to challenge the sufficiency and thoroughness of the other party's production of documents and other evidence." *Culliver v. BP Expl. & Prod., Inc.*, No. 3:21CV4942-MCR-HTC, 2022 WL 19568966, at *1 (N.D. Fla. Nov. 29, 2022) (citations omitted).

Prior to December 2015, Fed. R. Civ. P. 26(b)(1) explicitly included in the scope of discovery "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Courts understood this language to allow a certain amount of discovery on topics broadly described as falling within the category of "discovery on discovery"; particularly, as electronically stored information ("ESI") began to replace paper documents in the discovery process. Discovery on how ESI was stored, preserved,

archived, and destroyed was important in determining whether it was readily retrievable, searchable, reviewable, and easily produced. *See* Fed. R. Civ. P. 26(f) advisory committee notes (2006) (stating that the "identification of, and early discovery from, individuals with knowledge of a party's computer systems may be helpful."); *also, Doe v. District of Columbia*, 230 F.R.D. 47, 55-56 (D.D.C., 2005) (finding that Rule 26(b)(1) may be construed to allow discovery into document retention and destruction policies by permitting "[p]arties [to] obtain discovery regarding any matter, ... including the existence, description, nature, custody, condition, and location of any ... documents."); *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 3742929, at *9 (D. Kan. June 15, 2015). However, in the 2015 amendments to Rule 26, proportionality took center stage. Rule 26(b)(1) was rewritten to restore proportionality to the forefront of the discovery process, and the language concerning the discovery of documents and persons was omitted altogether. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

Since the 2015 amendments, discovery on discovery has increasingly been looked upon with disfavor, because parties can easily become mired in disputes over the collateral issue of how well the other party searched for information to respond to discovery requests. When that happens, discovery on discovery quickly becomes counterproductive and disproportional to the needs of the case. *See e.g.*, *Cardinali v. Plusfour, Inc.*, 2019 WL 3456630, at *3 (D. Nev. June 20, 2019) (holding that "discovery on discovery is disfavored and will be closely scrutinized. There is no outright prohibition on such line of inquiry, however, and the appropriateness of such discovery turns on the particular circumstances of each case."). In addition, discovery on discovery has become less necessary as many of the issues pertaining to ESI are resolved during the Rule 26(f)

conference. *See* Fed. R. Civ. P. 26(f)(3)(C). Accordingly, discovery on discovery usually is limited to circumstances where a specific deficiency is shown in a party's production, or where "a party's efforts to comply with proper discovery requests are reasonably drawn into question." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605, 2017 WL 1325344, at *8 (D. Colo. Jan. 3, 2017); *Baker v. Walters*, ____ F. Supp.3d. ____, 2023 WL 424788, at *14 (N.D. Tex. Jan. 26, 2023) ("As a general matter, it is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility and a responding party is best situated to preserve, search, and produce its own electronically stored information, which principle is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel, and eschewing discovery on discovery, unless a specific deficiency is shown in a party's production.") (internal markings and citations omitted). When a party seeks discovery on discovery, that party "must provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Grant v. Witherspoon*, 19-CV-2460 (PGG)(BCM), 2019 WL 7067088, at *1 (S.D.N.Y. 2019) (citation omitted).

Here, Black has not provided an adequate factual basis to justify a deposition on Topic 10. Black does not suggest that the WVSP is withholding documents, or that its search for documents was inadequate, or that it has been unclear about how documents were retained and destroyed and how and where the WVSP searched for complaints and files. Counsel for the WVSP has explained on more than one occasion that no additional records responsive to Black's requests for production of documents are in existence, and

that there is no way to recreate what may have existed ten, fifteen, twenty, or twenty-five years ago. Because there is nothing much to be gained by allowing a Rule 30(b)(6) deposition to proceed on Topic 10, compelling the WVSP to prepare a designee and appear for such a deposition is simply not proportional to the needs of the case. Particularly, when the affidavit to be provided by the WVSP will verify the absence of any additional documents and the lack of any method by which the WVSP can recreate documents that have been purged. Therefore, the Motion for a Protective Order seeking to prohibit Topics 10 and 11 of the Notice of Deposition is **GRANTED** pursuant to Fed. R. Civ. P. 26(b)(2(C), and the Motion to Compel a deposition on Topics 10 and 11 is **DENIED**.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to counsel of record.

**ENTERED:**  July 27, 2023

Cheryl A. Eifert
United States Magistrate Judge