IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JUSTIN K. BLACK,

>Plaintiff,

*v.*                                                              CIVIL ACTION NO.  3:22-cv-0096

THE WEST VIRGINIA STATE POLICE,
ANTHONY CUMMINGS,
KIMBERLY PACK,
GREG LOSH,
MIKE PARDE,
EDDIE BLANDKNSHIP, and
UNKNOWN OFFICERS OF THE WEST
VIRGINIA STATE POLICE,

>Defendants.

**MEMORANDUM OPINION AND ORDER**

In 2008, Plaintiff Justin Black was convicted for the murder of Deanna Crawford. *See*

*State v. Black*, 708 S.E.2d 491, 495 (W. Va. 2010); Complaint ("Compl.") ¶ 84. Ten years later,

the State informed him DNA evidence inculpated another person. *See* Compl. ¶ 98. Based on this

evidence, the Circuit Court of Cabell County vacated Plaintiff's conviction. *See id.* ¶ 99. Eleven

years after his initial conviction, the State of West Virginia dismissed all charges against

Plaintiff. *See id.* ¶ 100. Plaintiff filed suit.

Before the Court is Defendant West Virginia State Police's Motion for Summary

Judgment ("State Mot."), ECF No. 109, and Defendants Eddie Blankenship, Anthony

Cummings, Greg Losh, Kimberly Pack, and Mike Parde's Motion for Summary Judgment ("Ind.

Defs. Mot."), ECF No. 110. For the following reasons, the Court **GRANTS IN PART**, **DENIES IN PART** the motions and **DISMISSES** without prejudice Count XI.[1]

### FACTUAL BACKGROUND[2]

On August 8, 2002, the West Virginia State Police discovered Deanna Crawford's body on an isolated road in Cabell County, West Virginia. *See* State Mot., Ex. 1 at 2, ECF No. 109-1. Although the police collected evidence and interviewed suspects, the case went cold. *See id.*, Ex. 2 at 82, ECF No. 109-2.

Five years later, a new lead emerged. In January 2007, a man named Gregory Bailey informed Cabell County Deputy Sheriff Jim Schiedler that he had information about a "several year-old murder of a female." *Id.*, Ex. 3 at 6, ECF No. 109-3. Bailey explained his nephew, Brian Dement, implicated Plaintiff and the brothers Nathan and Phillip Barnett in Ms. Crawford's murder. *See id.* Schiedler relayed this information to Defendant Anthony Cummings. *See id.*, Ex. 4 at 30, ECF No. 109-4.

On January 27, 2007, Defendants Greg Losh and Mike Parde visited Dement's apartment. *See id.*, Ex. 15 at 17–18, 21–22, 25–26, ECF No. 119-15; *id.*, Ex. 16 at 47, ECF No. 16. Losh and Parde found Dement hiding in closet and escorted Dement to the police detachment. *See id.*, Ex. 15 at 29–32, 43; Ex. 16 at 50–52. Defendants then interrogated him. The interrogation yielded three statements. *See id.*, Ex. 18, ECF No. 109-18; Ex. 22, ECF No. 109-

---

[1] The Court also considered West Virginia State Police's Memorandum of Law in Support of Motion for Summary Judgment ("State Mem."), ECF No. 111; Plaintiff's Memorandum of Law in Support of Response in Opposition to State Police Defendants' Motion for Summary Judgment ("Pl.'s Opp. State"), ECF No. 119; West Virginia State Police's Reply in Support of its Motion for Summary Judgment ("State Reply"), ECF No. 127; Individual Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Ind. Defs. Mem."), ECF No. 112; Plaintiff's Memorandum of Law in Support of Response in Opposition to Individual Defendants' Motion for Summary Judgment ("Pl.'s Opp. Ind. Defs."), ECF No. 118; and Individual Defendants' Reply in Support of Motion for Summary Judgment ("Ind. Defs. Reply"), ECF No. 126.

[2] Defendants largely adopt Plaintiff's narrative throughout their briefing. *See* State Mem. at 4–5. However, the parties' narratives are not identical. *See, e.g., infra* Part I.A. The Court highlights these disparities where relevant.

22; Ex. 24, ECF No. 109-24. Each statement implicated Plaintiff in Ms. Crawford's murder. *See id.*, Ex. 18 at 1; Ex. 22 at 1–2; Ex. 24 at 6.

The next day, Plaintiff visited the police detachment to give a statement. *See id.*, Ex. 3 at 19. What happened next is disputed. *See infra* Parts I.A–D. However, the following facts are clear. Defendants Cummings, Losh, and Parde interviewed Plaintiff. *See* Pl.'s Opp. State at 13–17; State Mem. at 7–10. Defendant Eddie Blankenship sat with Plaintiff for some time. *See* State Mot., Ex. 26 at 128–31, ECF No. 109-26. Defendant Lisa Pack administered a polygraph exam. *See id.*, Ex. 29 at 3–4, ECF No. 109-29.

At 2:11 AM on January 29, 2007, Plaintiff made an audio statement. *See id.*, Ex. 30, ECF No. 109-30. In the statement, Plaintiff explained he and the Barnett brothers assaulted and murdered Ms. Crawford on July 28, 2002. *See id.*, Ex. 3 at 19, 41. At 2:40 AM, Parde handwrote Plaintiff's statement. *See id.*, Ex. 31, ECF No. 109-31. Plaintiff left the detachment. *See id.*, Ex. 3 at 20. Defendants then passed along Plaintiff's statement to a prosecutor. *See id.* at 31.

Two weeks later, Plaintiff returned to the detachment to recant his statement. *See* Pl.'s Opp. State, Ex. 10 at 144–50, ECF No. 119-10. Cummings did not take this statement. *See id.*, Ex. 7 at 305–08, ECF No. 119-7.

In May 2007, a grand jury indicted Plaintiff for Ms. Crawford's murder. *See* Compl. ¶ 66. At his trial in April 2008, Cummings and Parde testified to the voluntary nature of Plaintiff's interrogation and the veracity of Dement's statements. *See id.* ¶¶ 77–78. Other witnesses disputed these characterizations. *See id.* ¶¶ 78–79. Plaintiff was convicted of second-degree murder and sentenced to imprisonment for forty years. *See id.* ¶¶ 83–84.

Nearly ten years later, DNA testing excluded Plaintiff from semen found on Ms. Crawford's pants. *See id.* ¶¶ 92–93. In fact, the DNA profile matched convicted sex offender

-3-

Timothy Smith. *See id*. ¶¶ 92, 94. Based on this evidence, the Circuit Court of Cabell County vacated Plaintiff's conviction and granted him a new trial. *See id*. ¶ 99. In 2021, the State dismissed all charges against Plaintiff. *See id*. ¶ 100. Plaintiff filed suit.

## LEGAL STANDARD

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). In its analysis, the Court does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *See Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the Court draws all permissible inferences from the facts in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.". *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

The Court begins with an observation. Defendants assert qualified immunity. *See* State Mem. at 16–20; Ind. Defs. Mem. at 2, 13. Qualified immunity protects government officials from liability for violations of constitutional rights so long as they could reasonably believe their conduct did not violate established law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), by giving government officials "breathing room to make reasonable but mistaken judgments," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)

(citation omitted). To establish qualified immunity, the official must demonstrate the plaintiff has not shown facts "mak[ing] out a violation of a constitutional right" or the right was not "clearly established" at the time of its violation. *Owens v. Baltimore City State's Attorneys' Office*, 767 F.3d 379, 395 (4th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Asserting qualified immunity, however, does not change the standard summary judgment analysis. *See Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). Courts must be "careful" to "avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence." *Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022). When genuine disputes of material fact exist as to whether the conduct allegedly violative of a federal right "actually occurred," summary judgment is improper. *Hupp v. State Trooper Seth Cook*, 931 F.3d 307, 318 (4th Cir. 2019). *See also Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (holding disputes over "historical facts . . . must be reserved for trial").

## I.    Federal Causes of Action (42 U.S.C. § 1983)

Plaintiff asserts four federal causes of action. *First*, Plaintiff alleges Defendants violated his Fifth Amendment rights by coercing an involuntary confession from him and using the confession against him at trial. *See* Compl. ¶¶ 105–12. *Second*, Plaintiff alleges Defendants violated his Fourteenth Amendment rights by fabricating evidence implicating him in Ms. Crawford's murder. *See id.* ¶¶ 134–41. *Third*, Plaintiff alleges Defendants violated his Fourth Amendment rights by deliberately feeding prosecutors false evidence to initiate criminal proceedings against him. *See id.* ¶¶ 123–33. *Finally*, Plaintiff alleges Defendants failed to intervene to prevent one another from violating his constitutional rights. *See id.* ¶¶ 142–46.[3]

---

[3] The Court finds these rights were clearly established at the time they were allegedly violated. By 2007, it was clear a coerced confession and fabricated evidence could not form the basis of probable cause for an arrest or prosecution. *See Gilliam v. Sealey*, 932 F.3d 216, 235 (4th Cir. 2019) (discussing cases); *Washington v. Wilmore*, 407 F.3d 274, 282–84 (4th Cir. 2005) (same); *Ferguson v. Boyd*, 566 F.2d 873, 877 (4th Cir. 1977) (same).

Running through each of these claims is Plaintiff's core theme: Tim Smith likely murdered Deanna Crawford and Plaintiff had no role in the crime. *See, e.g.*, Pl.'s Opp. Ind. Def. at 6. To support these factual allegations, Plaintiff stresses Smith had no connection to Plaintiff, DNA testing conducted in 2002 during the initial investigation excluded Plaintiff, and DNA testing conducted in 2017 matched Tim Smith to DNA samples found at the crime scene. *See id.*

The Court proceeds accordingly.

### A. Fifth Amendment—Coerced Confession (Count I)

The Fifth Amendment protects against involuntary confessions being introduced at trial. *See, e.g.*, *Kansas v. Ventris,* 556 U.S. 586, 590 (2009); *Doby v. S.C. Dep't of Corrections*, 802 F.2d 718, 721 (4th Cir. 1986) (calling this right "axiomatic").

Involuntary confessions can be extracted through mental and physical means. *See Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). Although coercive police activity is necessary for an involuntary confession, *see United States v. Giddins*, 858 F.3d 870, 881 (4th Cir. 2017), it is not sufficient, *see United States v. Braxton*, 112 F.3d 777, 780–81 (4th Cir. 1997) (en banc). That is, "threats, violence, implied promises, improper influence, or otherwise coercive police activity" do not "automatically render a confession involuntary." *Id.* Instead, the "proper inquiry" is whether the defendant's "will has been overborne or his capacity for self-determination [] critically impaired." *Id.* To answer this question, the Court assesses the totality of circumstances. *See United States v. Holmes*, 670 F.3d 586, 592 (4th Cir. 2012) (quotation omitted). The characteristics of the defendant, the setting of the interview, and the details of the interrogation are relevant. *See United States v. Umana*, 750 F.3d 320, 344 (4th Cir. 2014).

With these principles in mind, the Court turns to the parties' arguments. Defendants present three arguments in support of summary judgment. None are persuasive. *First*,

Defendants argue Plaintiff did not "confess" to Ms. Crawford's murder at all because he did not acknowledge guilt or admit to participating in her murder. *See* Ind. Defs. Mem. at 2–3. This is a red herring. A confession is a "criminal suspect's oral or written acknowledgement of guilt, often including details about the crime." *Confession*, Black's Law Dictionary (11th ed. 2019). More broadly, a confession is "any avowal or acknowledgment of an inculpatory or sinful act." *Id.* Plaintiff's statement to the police satisfies these definitions. Plaintiff stated he drove Ms. Crawford to an isolated location in Cabell County alongside the Barnetts and Dement, Dement and the Barnetts walked away with the victim while he sat idly by, and the victim never returned to the vehicle. Collectively, these statements acknowledge an inculpatory act—aiding in a murder. *See* State Mem., Ex. 39 at 758–60, ECF No. 109-38 (referring to Plaintiff's statement as a "confession" at trial). Even if these statements are not themselves incriminating, the Fifth Amendment still protects them as they sparked a criminal investigation and prosecution. *See United States v. Hubbell*, 530 U.S. 27, 37 (explaining the Fifth Amendment protects statements that "lead to the discovery of incriminating evidence" even if the "statements themselves are not incriminating"); *Kastigar v. United States*, 406 U.S. 441, 445 (1972) (similar).

*Next*, Defendants argue the totality of the circumstances show the Plaintiff's statement was "voluntary and not the product of coercive techniques." Ind. Def.'s Mem. at 4. This argument is premature. Before the Court can analyze the totality of circumstances, the Court must know the circumstances. Viewing the evidence in the light most favorable to Plaintiff reveals material disputes about the details of the interrogation persist.

Take Plaintiff's version of his interrogation. Over the course of seven hours, Defendants pounded him with questions, refused to accept his denials, misrepresented his polygraph exam results, ridiculed him, repeatedly called him a liar, and threatened punitive action against him.

*See* Pl.'s Opp. State, Ex. 10 at 104–05, 109, 152–53, 161–62, 271–74. Defendants provided him details of the crime to parrot back as part of his statement—including how Ms. Crawford died, her broken neck, that she had been drugged, that her body was decomposed, the presence of bees near her body, what car was used, and even who sat where. *See id.* at 150–60. Defendants threatened to revoke his parole if he did not sign a false statement. *See id.* at 89–90, 104–05, 109, 152, 271–74. Defendants repeatedly told Plaintiff he was guilty and insisted he implicate himself and the Barnetts. *See id.* at 152–53, 273–74. Plaintiff cried. *See id.* at 98, 261.

      Defendants offer a more docile picture. Defendants deny making any threats whatsoever. *See, e.g.*, *id.*, Ex. 4 at 301, ECF No. 109-4. They deny feeding any information about the murder to Plaintiff. *See id.* at 262–64. They deny Plaintiff cried. *See id.* at 265.

      These disputes go to the heart of the totality of the circumstances inquiry. They speak to the "historical facts respecting the officer's conduct." *Honaker v. Town of Sophia*, 184 F. Supp. 3d 319, 329 (S.D. W. Va. 2016). (quoting *Pritchett v. Alford*, 973 F.2d 307, 312–13 (4th Cir. 1992)). A reasonable jury could find Plaintiff's version of the interrogation more credible; another could disagree. Regardless, the Court cannot weigh the credibility of the contrasting stories at this stage—even if one side relies mainly on self-serving affidavits. *Cf. Blankenship v. Fox News Network, LLC*, 2022 WL 316719, at *5 (S.D. W. Va. Feb. 2, 2022) (noting courts do not make "credibility determinations and generally will not reject an otherwise proper affidavit" unless the affidavits' allegations are "too incredible to be accepted by reasonable minds"). Because genuine disputes of material fact exist as to the circumstances of the interrogation, the Court reserves judgment as to whether Defendants violated any constitutional right at all.

*Finally*, Defendants argue even assuming Plaintiff's statement was a coerced confession, the Cabell County Circuit Court's determination that the statement was admissible cuts off liability as a superseding cause. *See* Ind. Defs. Mem. at 3–4.

The Court disagrees. Section 1983 claims require the plaintiff demonstrate but-for and proximate causation. *See Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Subsequent acts of independent decisionmakers such as prosecutors, grand juries, and judges may "break the causal chain" between an officer's misconduct and the plaintiff's constitutional injury. *Id.* However, this rule has exceptions. When a police officer acts nefariously to procure a criminal prosecution, causation is not broken even if the prosecutor "retains all discretion to seek an indictment." *Id.* In other words, if the police officer was "instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988).

If the jury finds Defendants "managed to obtain an undeniably false confession" from a "vulnerable young man who tried for more than six hours to assert his innocence," Pl.'s Opp. Ind. Def. at 13, it is "entirely foreseeable that this fabricated 'evidence' would be used to convict" Plaintiff at trial. *Avery v. City of Milwaukee*, 847 F.3d 433, 437 (7th Cir. 2017) (holding an "unbroken chain" connects "concocting [a] confession" and a "wrongful conviction and imprisonment"). After all, Plaintiff's statement was one of the principal pieces of evidence used against him. *See* State Mem., Ex. 39 at 758–60. The Court, therefore, rejects Defendants' "no causation" argument. *See Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) (recognizing a coerced confession may provide the basis for a claim under § 1983 if there is a reasonable likelihood that, without the use of the confession, the defendant would not have been convicted).

*Cf. Malley v. Briggs*, 475 U.S. 335, 345 n.7 (1986) (holding a judge's decision to issue a warrant does not "break[] the causal chain" between the application for a warrant and an unlawful arrest).

Accordingly, the Court **DENIES** summary judgment on Count I.

### B. Fourteenth Amendment—Fabrication of Evidence (Count IV)

The Fourteenth Amendment protects "against deprivations of liberty accomplished without due process of law." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). This includes the right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Washington*, 407 F.3d at 282. To prevail on this claim, Plaintiff must prove the fabricated evidence caused his conviction and subsequent incarceration. *See Massey v. Ojanitt*, 759 F.3d 343, 356–57 (4th Cir. 2014) (citing sources). That is, Plaintiff must prove the alleged fabrication caused his conviction and his conviction was a "reasonably foreseeable" result of the fabrication. *Gilliam*, 932 F.3d at 238. The causal chain is not broken if the officer "misled or unduly pressured the prosecutor." *Evans*, 703 F.3d at 649.

Defendants present three arguments for summary judgment. None are persuasive. Defendants begin by arguing Plaintiff fails to provide evidence suggesting they fabricated evidence such as Cummings' report, Pack's polygraph examination results, and Losh's written statement. *See* Ind. Def. Mem. at 7. Moreover, Defendants argue there is "no evidence" Dement was "under the influence" at the time he was interviewed. *See id.*

The Court disagrees. Plaintiff points to more than enough evidence for a jury to infer Defendants fabricated evidence. Plaintiff highlights discrepancies regarding how Cummings first learned about Plaintiff and the Barnett brothers. *See* Pl. Opp'n Ind. at 15. Some evidence suggests Schiedler passed along a written note to Cummings listing Plaintiff and the brothers—sparking the eventual investigation, interrogation, prosecution, and conviction of Plaintiff. *See*

State Mem., Ex. 3 at 7. Other evidence suggests Schiedler never met with Bailey in person—let alone received a written note implicating Plaintiff or the Barnetts' name in Ms. Crawford's murder. *See* Pl.'s Opp. State, Ex. 6 at 51–53, 75, 77, 91, ECF No. 119-6. Plaintiff also highlights evidence Dement was intoxicated during his interview, *see* Pl's Opp. State at 5–6, and that Defendants fed information to Dement that implicated Plaintiff including facts unknown to the public at the time of his interrogation, *see id.*, Ex. 19 ¶¶ 5–6. Finally, Plaintiff stresses his testimony suggesting his own statements were orchestrated products of fed information and coercive tactics. *See id.*, Ex. 10 at 150–60.

Considering this evidence alongside Plaintiff's evidence that his statement was false, a reasonable jury could find Defendants "created evidence they knew to be false" by prematurely pursuing targets and scripting statements from witnesses. *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014). Or as Plaintiff puts it: Defendants "set their sights on four young men" based on hearsay from a "vulnerable, drug-addicted young man." Pl.'s Opp. Ind. Defs. at 6.

Moreover, the "main evidence" presented at Plaintiff's trial "linking him to the crime was his confession." *Washington v. Buraker*, 2006 WL 759675, at *8 (W.D. Va. Mar. 23, 2006). In fact, the prosecutor placed "great emphasis on [Plaintiff's] knowledge of the details of the crime scene." *Id.* at *7. As a result, if the jury finds Defendants fabricated evidence, their behavior does not break the causal chain required under § 1983. *See Massey*, 759 F.3d at 357; *Washington*, 407 F.3d at 283 (explaining a prosecutor and grand jury cannot "shield" an officer who "deliberately supplied misleading information that influenced the decision").

Defendants next argue Plaintiff cannot establish Defendants fabricated his statement because he did not deny making the statement. *See* Ind. Defs. Mem. at 8. This misses the point. A fabricated evidence claim can be predicated on investigators telling witnesses "what to say

knowing that what [the witness] was telling them was false." *Fields v. Wharrie*, 740 F.3d 1107, 1112 (7th Cir. 2014). This is exactly what Plaintiff alleges. By feeding him information about Ms. Crawford's murder that was plainly inconsistent with the murder scene, Plaintiff suggests he was not a "reluctant witness" forced to "say what may be true"—he was a coached liar. *Id.*

Defendants make one last pitch. They argue Plaintiff cannot rely on the fact that Dement recanted his statements implicating Plaintiff. *See* Ind. Def. Mem. at 8–9. They stress Dement testified at Plaintiff's trial that all his statements were true—including his statements Plaintiff participated in Ms. Crawford's murder. *See id.* at 8. Again, this misses the point. A fabrication of evidence claim turns on whether the fabricated evidence served as a basis for criminal charges and influenced the jury's decision—not what happens at trial. *See Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019) ("[F]abricated evidence that is 'used as [the] basis for a criminal charge' can form the basis for a § 1983 claim because, absent that evidence, there would have been no jury.") (quoting *Halsey*, 750 F.3d 273, 294 n.19 (3d Cir. 2014)).

The Court's task is not to determine which parties' story is more credible at this stage. *See Jacobs v. N.C. Admin. Off. Of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Instead, the Court's task is to determine whether Plaintiff provides enough evidence to overcome Defendants' argument there is "no evidence" of fabrication. The Court finds Plaintiff succeeds.

Accordingly, the Court **DENIES** summary judgment motion on Count IV.

### C.  Fourth Amendment—Malicious Prosecution (Count III)

The Fourth Amendment protects against police officers initiating criminal proceedings without probable cause. *See Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). To prove "malicious prosecution," the plaintiff must prove "the defendant (1) caused (2) a seizure of the

plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans*, 703 F.3d at 647.

Police officers are often not the best candidates for malicious prosecution suits. *See Rehburg v. Paulk*, 566 U.S. 356, 367 (2012) (noting it would be "anomalous" to permit a police officer testifying before a grand jury to be sued for malicious prosecution). This is because it is the prosecutor who is "actually responsible" for the decision to initiate a prosecution. *Id. See also Evans*, 703 F.3d at 647. Nevertheless, police officers cannot hide behind prosecutors and other independent-decision makers when they lie or mislead the prosecutor, fail to disclose exculpatory evidence to the prosecutor, or unduly pressure the prosecutor to seek an indictment. *See id.* In short, causation is satisfied when an officer includes "misstatement and falsehoods in his investigatory materials." *Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007).

Defendants present four arguments for summary judgment. None are persuasive. *First*, Defendants argue Plaintiff provides no evidence Defendants provided misleading information to the prosecutor or pressured him to indict. *See* Ind. Defs. Mem. at 9–10. The Court disagrees. Plaintiff points to the evidence underlying his fabrication claim to support his malicious prosecution claim. *See* Pl.'s Opp. Ind. Defs. at 14. As a result, Plaintiff's malicious prosecution claim rises and falls with his fabrication of evidence claim. Of course, a police officer cannot be sued for submitting truthful reports to a prosecutor. However, an officer can be sued for "conduct outside the courtroom" even if they "testify[] about the charged conduct." *Snyder v. City of Alexandria*, 870 F. Supp. 672, 688 (E.D. Va. 1994). Because a genuine dispute of material fact exists as to whether Defendants fabricated evidence, *see supra* Part I.B., the Court reserves judgment as to this cause of action.

*Second*, Defendants argue Plaintiffs cannot hold Defendant liable for their trial or grand jury testimony because they are entitled to absolute immunity. *See* Ind. Defs. Mem. at 10. Even assuming this is correct, Defendants misunderstand Plaintiff's claim. Plaintiffs' "claims do not depend on Defendants' actions with respect to the grand jury." Pl's Opp. Ind. Def. at 20. *See also Black v. W. Va. State Police*, 2023 WL 2667754, at *3–*4 (Mar. 28, 2023). Their claim is Defendants coerced Plaintiff into making a false confession, falsely arrested him, and supplied the prosecutor with inconsistent and fabricated evidence. *See id.* at *4 (citing Compl. ¶¶ 126, 154). All this conduct occurred "outside the courtroom." *Snyder*, 870 F. Supp. At 688.

*Third*, Defendants argue they have no duty to provide exculpatory evidence to the grand jury. *See* Ind. Defs. Mem. at 11. Defendants once again misread Plaintiff's claims. Again, his "claims do not depend on Defendants' actions with respect to the grand jury." Pl's Opp. Ind. Def. at 20. They turn on pre-trial conduct.

*Finally*, Defendants rely on *Rehberg v. Paulk*, 566 U.S. 356 (2012), for the proposition a police officer cannot be held accountable for maliciously procuring an unjust prosecution under § 1983 because prosecutors are responsible for indictments. *See* Ind. Defs. Mem. at 11. Defendants read *Rehberg* too broadly. In *Rehberg*, the plaintiff sued the chief investigator at a district attorney's office for malicious prosecution under § 1983. *See* 566 U.S. at 360. The plaintiff's claim centered on the investigator's grand jury testimony—he alleged the investigator "conspired to present and did present false testimony to the grand jury." *Id.* The Court rejected this claim. *See id.* at 375. The Court held the grand jury witnesses are absolutely immune for their testimony to the grand jury. *See id.* at 369. In passing, the Court noted it would be "anomalous" to permit a police officer who testifies before a grand jury to be sued for malicious prosecution because the prosecutor is "actually responsible for the decision to prosecute." *Id.* at

-14-

372 (citations omitted). The Court, however, did not "suggest" absolute immunity extends to "*all* activity that a witness conducts outside of the grand jury room." *Id.* at 370 n.1. In fact, the Court upheld its prior decisions permitting § 1983 suits predicated on claims police officers falsified evidence. *See id.* (referencing *Kalina v. Fletcher*, 522 U.S. 118 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); and *Malley v. Briggs*, 475 U.S. 335 (1986)).

At base, Defendants' attempt to rely on *Rehberg* underscores its misunderstanding of Plaintiff's claims. Yet again, Plaintiff's claims are not about Defendants' grand jury or trial testimony. Their claims are about their behavior before the grand jury. *Rehberg* does not speak to this issue. *See Coggins v. Buonara*, 776 F.3d 108, 113 (2d Cir. 2015) (explaining *Rehberg* does not prevent claims against police that exist "independently" of the officer's grand jury testimony). *See also Montoya v. Vigil*, 898 F.3d 1056, 1069 n.12 (10th Cir. 2018) (discussing *Rehberg*'s relationship to claims of fabricated evidence across circuits).

Accordingly, the Court **DENIES** summary judgment on Count III.

### D. Bystander Liability (Count V)

To encourage police officers to uphold the law and protect the public from illegal acts, the Fourth Circuit recognizes a claim for bystander liability. *See Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203 (4th Cir. 2002). For an officer to be liable for his partner's actions, he must: (1) be "confronted" with the allegedly illegal acts, (2) be able to stop them, and (3) do nothing. *Stanton*, 25 F.4th at 237 (citing *id.* at 203–04).

As a preliminary note, Defendants argue Plaintiff's bystander liability claims fail as a matter of law because an "officer cannot simultaneously be a perpetrator and a bystander." Ind. Defs. Mem. at 12. This argument is superficially appealing—a bystander is typically someone

"present when an event takes place, but who does not become directly involved in it." *Bystander*, Black's Law Dictionary (10th ed. 2014). Ultimately, however, it is meritless.

Bystander liability is not limited to the officer "who idly stands watch, wholly separated from the victim." *Comptom v. O'Bryan*, 2018 WL 813443, at *6 (S.D. W. Va. Feb. 8, 2018). It also applies to officers who "actively participate[] in a larger incident yet whose conduct otherwise falls short of a constitutional violation." *Id.* The Fourth Circuit's decision in *Thompson v. Virginia* is instructive. There, the Court found bystander liability applied to two officers who gave a prisoner a 'a so-called 'rough ride' . . . in a [prison] van." 878 F.3d 89, 94 (4th Cir. 2017). Both officers restrained the prisoner and refused to buckle him up. *See id.* However, only one officer "drove erratically" and "taunted and harassed" the prisoner. *Id.* at 94–95. Nevertheless, the non-driving officer's active participation in preparing the prisoner for transportation did not bar bystander liability because the non-driving officer was still "aware of the risk" posed to the prisoner and did not stop it. *See id.* at 109. Similarly, in *Lester v. City of Gilbert*, this Court found a bystander liability claim could proceed against an officer even if a reasonable jury found the officer was the "ringleader" of the allegedly unlawful conduct because the officer "made no attempt to prevent officers" from initiating the unlawful conduct or to stop it once it started. 85 F. Supp. 3d 851, 855–56 (S.D. W. Va. 2015).

In short, "passivity—strictly speaking—is not a predicate to bystander liability." *Compton*, 2018 WL 813443 at *7. Instead, the key to bystander liability is evidence the officer knew a fellow officer was violating the plaintiff's constitutional rights, could prevent the harm, and chose not to act. *See Randall*, 302 F.3d at 204.

With these principles in mind, the Court rejects Defendants' argument Cummings, Losh, and Parde are immune from bystander liability because each was an "active participant." Ind.

Defs. Mem. at 12–13. However, the Court recognizes the parties dispute how these defendants acted throughout Plaintiff's interrogation. *See supra* Part I.A, B. Without these historical facts established, the Court cannot determine whether these defendants were confronted with any unconstitutional behavior whatsoever. Because an illegal act is a predicate finding for bystander liability, the Court finds it premature to rule on this issue.

As to Blankenship, Defendants argue he was not present during the Plaintiff's interviews. *See* Ind. Defs. Mem. at 12. However, Plaintiff alleges Blankenship knew he was in the police detachment, sat with Plaintiff for nearly three hours, and was only fifteen to eighteen feet away from Plaintiff's interview. *See* Pl.'s Opp. Ind. Def. at 11, 20. Nevertheless, Blankenship did nothing to stop the interrogation. *See* Pl's Opp. State, Ex. 19. If a reasonable jury finds illegal acts transpired, they could also find Blankenship's proximity to the interview meant he *could* have intervened. *Contrast Thomas v. Holly*, 533 F. App'x 208, 222 (4th Cir. 2013) (rejecting claim for bystander liability when officer was "two hundred yards away from the scene").

As to Pack, Defendants argue she was "only present for the polygraphs she conducted." Ind. Def.'s Mem. at 12. Plaintiff does not contest this statement or offer evidence she witnessed unconstitutional acts from her fellow officers. As a result, Plaintiff's bystander liability claim against Pack fails. *See Whitten v. Gunter*, 757 F. App'x 235, 236–37 (4th Cir. 2018) (rejecting bystander liability claim when no evidence suggests defendants "could even see" unlawful activity, let alone intervene to stop it).

Accordingly, the Court **DENIES** summary judgment as to Defendants Blankenship, Cummings, Losh, and Parde. The Court **GRANTS** summary judgment as to Defendant Pack.

## II.     State Law Claims

Plaintiff alleges four causes of action under West Virginia law. *First*, Plaintiff alleges Defendants deliberately fed prosecutors false evidence in hopes of instituting criminal proceedings against him. *See* Compl. ¶¶ 153–60. *Second*, Plaintiff alleges Defendants intentionally inflicted emotional distress on him. *See id.* ¶¶ 161–65. *Third*, Plaintiff alleges Defendant West Virginia State Police are vicariously liable for the actions of the individual defendants. *See id.* ¶¶ 171–73. *Finally*, Plaintiff alleges Defendants must indemnify Plaintiff for his damages. *See id.* ¶¶ 174–79.

### A.  State Law Malicious Prosecution (Count VII)

West Virginia law protects against malicious prosecutions. To succeed, Plaintiff must show: (1) the prosecution was "set on foot and conducted to its termination, resulting in [P]laintiff's discharge;" (2) "it was caused or procured by the defendant;" (3) "it was without probable cause;" and (4) it was "malicious." *Goodwin v. City of Shepherdstown*, 825 S.E.2d 363, 368 (W. Va. 2019). Although indictments are presumed to be based on probable cause, *see Jarvis v. W. Va. State Police*, 711 S.E.2d 542, 550 (W. Va. 2010), a malicious prosecution claim can succeed if the indictment was "procured by fraud, perjury, or falsified evidence," *id.*

Because the same operative facts underly Plaintiff's federal malicious prosecution claim, *see supra* Part I.C, the Court finds summary judgment premature as to Plaintiff's state malicious prosecution claim, *see Hutchinson v. City of Huntington*, 479 S.E.2d 649, 659 (W. Va. 1996) ("[I]t is the jury, not the judge, who must decide the disputed 'foundational' or 'historical' facts that underlie the immunity determination.").

Accordingly, the Court **DENIES** summary judgment on Count VII.

**B.  State Law Intentional Infliction of Emotional Distress (Count VIII)**

To prevail on a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must prove: (1) the defendant's conduct was "atrocious, intolerable, and so extreme and integrous as to exceed the bounds of decency;" (2) the defendant acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) the defendant's action caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by plaintiff was so severe no reasonable person could be excepted to endure it. *Philyaw v. Eastern Assoc. Coal Corp.*, 633 S.E.2d 8, 13 (W. Va. 2006) (quotation omitted). An IIED claim cannot be predicated on "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E.2d 149, 157 (W. Va. 1995).

Plaintiff's IIED claim rises and falls with his other claims. He argues being subjected to an "unconstitutionally coercive interrogation," being forced to "make a false and involuntary statement implicating himself in a crime he did not commit," and watching fabricated evidence be used to arrest and prosecute him constitutes extreme and outrageous behavior. Compl. ¶ 162.

Wrongfully convicting and incarcerating an individual for ten years "may reasonably be regarded as so extreme and outrageous to permit recovery." *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419, 428 (W. Va. 1998). Our society's interest in avoiding injustice is "most compelling" in the context of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Indeed, the injustice that results from the conviction of an innocent person is at the "core of our criminal justice system." *Id.* As Justice Harlan wrote: "[I]t is far worse to convict an innocent man than to let a guilty man go free." *In re Winship*, 397 U.S. 358 (1970) (Harlan, J., concurring). Therefore, wrongfully incarcerating an individual for a decade constitutes behavior

"no reasonable person could be expected to endure." *Philyaw*, 633 S.E.2d at 13.

However, the parties dispute too many facts to resolve this question at this stage. Specifically, the Court cannot determine whether Defendants' conduct was "atrocious, intolerable, and so extreme and integrous as to exceed the bounds of decency" until it knows what Defendants' conduct entailed. The parties dispute what Defendants did the night of the interrogation. *See infra* Part I.A. They dispute whether Defendants knowingly fabricated evidence. *See supra* Part I.B. They dispute whether certain Defendants could intervene. *See supra* Part I.A. The Court, therefore, finds it premature to determine whether Plaintiff can succeed as a matter of law on his IIED claim.

Accordingly, the Court **DENIES** summary judgment on Count VIII.

### C.  Vicarious Liability (Count X)

A state entity is liable for discretionary acts of its employees if their acts were a violation of clearly established state or constitutional rights or laws and were fraudulent, malicious, or otherwise oppressive. *See W. Va. Div. of Nat. Res. v. Dawson*, 832 S.E.2d 102, 116 (W. Va. 2019); *State v. Chase Securities*, 424 S.E.2d 591, 599–600 (W. Va. 1992).

The Defendants contend Plaintiffs cannot satisfy this standard. The Court finds this argument premature. As previously discussed, disputes over material facts preclude summary judgment on Plaintiff's state law claims. *See supra* Part II.A, B. A ruling on vicarious liability would be, therefore, be premature. *See Hewitt v. Stephens*, 2023 WL 4494457, at *15 (S.D. W. Va. July 12, 2023) (refusing to decide vicarious liability until state law claim was decided).

Accordingly, the Court **DENIES** summary judgment on Count X.[4]

---

[4] The Court addressed and rejected Defendants' argument Plaintiff's IIED claim can be "dismissed as filed outside the statute of limitations" in its Memorandum Opinion and Order regarding Defendants' Motion to Dismiss. State Defs.' Reply at 2. There, the Court held Plaintiff's IIED claim is "subject to deferred accrual" under *Heck v. Humphrey*, 512 U.S. 477 (1994). The Court does not disturb this ruling.

### D. Indemnification (Count XI)

In its briefing, Plaintiff concedes Count XI "was never intended to be a separate cause of action" but simply "demonstrate[s] this case can go forward because all Defendants are covered by insurance." Pl.'s Opp. State at 19. Federal courts "routinely" hold indemnity claims unripe until the alleged indemnitee's liability has been fixed by a judgment or settlement. *Allied World Surplus Lines Ins. Co. v. Day Surgery Ltd.*, 451 F. Supp. 3d 577, 587 (S.D. W. Va. 2020) (citations omitted). As a result, this claim is unripe.

Accordingly, the Court **DISMISSES** without prejudice Count XI and **DENIES** summary judgment to Defendants.

## CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions for Summary Judgment. The Court **DISMISSES** without prejudice Count XI. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        September 29, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-21-