IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| JUSTIN K. BLACK, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 3:22-0096 |
| THE WEST VIRGINIA STATE POLICE, ) | |
| ANTHONY CUMMINGS, KIMBERLY PACK, ) | The Honorable Robert Chambers |
| GREG LOSH, MIKE PARDE, ) | |
| EDDIE BLANKENSHIP, and ) | |
| UNKNOWN OFFICERS OF THE ) | |
| WEST VIRGINIA STATE POLICE, ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S MOTION TO PROCEED NOTWITHSTANDING
DEFENDANTS' INTERLOCUTORY APPEAL**

Plaintiff Justin Black, by his attorneys, Lonnie Simmons and Loevy & Loevy, respectfully moves to proceed with trial notwithstanding Defendants' interlocutory appeal. Specifically, Mr. Black moves for an order certifying defendants' interlocutory appeal as frivolous or, in the alternative, to bifurcate the state law claims, and proceed to trial.

**INTRODUCTION**

"Lacking a legal basis or legal merit; manifestly insufficient as a matter or law." That is how Black's Law Dictionary defines the term "frivolous." It is a fitting description of Defendants' grounds for delaying the trial.

This Court denied summary judgment based on a straightforward finding that disputes of fact preclude qualified immunity. Defendants disagree, but the appellate court has no interlocutory jurisdiction to hear such appeals. Congress never granted it and there are very strong policy reasons to avoid the delay and waste of resources immature appeals cause.

Likewise, the Court did not rely on any proposition of law that was unsettled when Defendants acted in 2007. Indeed, Defendants never even argued that the law was unsettled under Plaintiff's recitation of the facts, much less preserved such an argument for appeal. Thus, Defendant's side of the merit ledger here is empty.

On Plaintiff's side, however, there is serious prejudice from Defendants helping themselves to delay the trial. It has been over 20 years since the murder for which Plaintiff was wrongfully convicted. Several witnesses have already died or disappeared since the state dismissed charges against Plaintiff. There can be no guaranty that more will not become unavailable while we await scheduling, briefing, argument, and a ruling that could take well over a year. Add to that the fact that this Court will almost certainly have other matters scheduled when the appellate court returns the case and that Defendants and counsel are likely to claim (truthfully) that they and their witnesses have scheduling conflicts, and it is easy to see Defendants' frivolous notice of appeal adding two or more years of delay. The prejudice Plaintiff suffers from loss of witnesses and loss of time will be irremediable. Plaintiff continues to wait for justice.

For these reasons, the Court should use the tools at hand to prevent prejudice and injustice by proceeding to trial without delay.

## DISCUSSION

The basis of the Court's ruling is simply that there is evidence in the record which, if credited by a jury, would provide Defendants committed misconduct that was unconstitutional under clearly established law. ECF 170 at 5. "By 2007, it was clear a coerced confession and fabricated evidence could not form the basis of probable cause for an arrest or prosecution." *Id*. at n. 3 (citing *Gilliam v. Sealey*, 932 F.3d 216, 235 (4th Cir. 2019) (discussing cases);

*Washington v. Wilmore*, 407 F.3d 274, 282–84 (4th Cir. 2005) (same); *Ferguson v. Boyd*, 566 F.2d 873, 877 (4th Cir. 1977) (same)). The Court then held that "genuine disputes of material fact exist" as to whether Defendants committed such misconduct. ECF 170 at 5.

Defendants filed an interlocutory notice of appeal on October 2, 2023, but, given the basis of the Court's ruling and the arguments Defendants themselves presented (and did not present), Defendants have no meritorious challenge to raise on appeal and the notice of appeal does not divest this Court of jurisdiction either. The proper course is to certify the appeal as frivolous and proceed to trial. Alternatively, the Court could bifurcate the state law claims from the federal claims and proceed to trial on the former.

### A. Defendants' Interlocutory Appeal Does Not Divest This Court of Jurisdiction to Proceed with the Trial

Generally, the filing of a notice of appeal divests a district court of jurisdiction in a case. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam). There is, however, an important caveat: the appellate court must have jurisdiction to hear the appeal. That caveat necessitates scrutiny of Defendant's interlocutory appeal.

Appellate jurisdiction prior to the end of a case is severely limited, and for good reason given the delay, disruption, and expense interlocutory appeals cause in the trial court proceedings. Accordingly, interlocutory appellate jurisdiction exists only when the defendant presents an abstract question of law determining qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). A challenge to the district court's view of the facts, therefore, must await final judgment. *Johnson v. Jones*, 515 U.S. 304, 313 (1995) (appellate jurisdiction in qualified-immunity appeals is expressly limited to resolving "abstract issues of law.").

As applied here, the arguments Defendants raised at summary judgment are entirely fact-bound. Their motions do not even attempt to identify an abstract question of law entitling them

3

to judgment in their favor. Concomitantly, the Court's summary judgment order does not turn on an abstract question of law. Rather it is based on the very disputes of fact that must be finally resolved before a case goes up on appeal.

Under these circumstances, where the trial court's qualified immunity ruling is not based on a pure question of law, an attempt to appeal that decision before final judgment does not oust the district court of jurisdiction. *See Mgmt. Sci. Am. Inc. v. McMuya*, 956 F.2d 1162 (4th Cir. 1992) (Table); *see also Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir.1992); *Yates v. City of Cleveland*, 941 F.2d 444, 448–49 (6th Cir.1991); *Stewart v. Donges*, 915 F.2d 572, 576–78 (10th Cir. 1990); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989); *United States v. Grabinski*, 674 F.2d 677, 679 (8th Cir.) (en banc), *cert. denied*, 459 U.S. 829 (1982); *United States v. Dunbar*, 611 F.2d 985, 987–88 (5th Cir.) (en banc), *cert. denied*, 447 U.S. 926 (1980).

Rather, the district court can certify that an interlocutory appeal is frivolous and proceed. *See Mgmt. Sci. Am. Inc. v. McMuya*, 956 F.2d 1162 (4th Cir. 1992) ("Generally, the filing of a notice of appeal divests the district court of all jurisdiction in a case. Thus, while an appeal is pending a district court lacks the power to enter an order respecting damages. *However, this rule does not apply where the district court has certified the appeal to be frivolous.* In the present case the district court certified McMuya's appeal as frivolous and it therefore retained jurisdiction to enter the award of damages." (emphasis added, citations omitted).

The rule is intended to prevent these exact circumstances: the misuse of qualified immunity claims that will disrupt trial schedules and waste appellate resources. *See Behrens v. Pelletier*, 116 S. Ct. 834, 841 (1996) (stating that certifying appeals as frivolous enables district courts to retain jurisdiction and minimize disruption). The rule also ensures that the trial court can protect against the prejudice that delay causes:

> During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiff's entitlements may be lost or undermined. Most deferments will be unnecessary. Defendants may seek to stall because they gain from delay at plaintiffs' expense, an incentive yielding unjustified appeals. Defendants may take *Forsyth* appeals for tactical as well as strategic reasons: disappointed by the denial of a continuance, they may help themselves to a postponement by lodging a notice of appeal. Proceedings masquerading as *Forsyth* appeals but in fact not presenting genuine claims of immunity create still further problems.

*Apostol*, 870 F.2d at, 1338–39 (recognizing the issue of tactical immediate appeals).

Those concerns are amplified in a case such as this, where most of the events at issue occurred more than two decades ago. The passage of time has already made several of Mr. Black's essential witnesses unavailable, either because of their death or the challenges in locating them after so many years. For example, Mr. Black's mom has passed away and cannot testify about Mr. Black's state after the interrogation, her experience going with Mr. Black to recant his coerced confession, or any other of her observations relevant to Defendants' liability and Mr. Black's damages. At least six other individuals Mr. Black intended to subpoena for the October 3, 2023 trial date have passed away. Addresses or phone numbers investigated from 2018–2020 are no longer valid for at least 11 important witnesses, including the confidential informant (that Defendants dispute was a confidential informant), illustrating the prejudice delay causes. Further delay should not be accepted.

### B. The Court Should Certify That Defendants' Qualified Immunity Appeal Is Frivolous

The Court's determination that genuine issues of material fact preclude summary judgment is unreviewable by the Fourth Circuit in a qualified-immunity appeal. As a result, Defendants' appeal is frivolous.

1. **The Supreme Court has Held Repeatedly that Appellate Jurisdiction over Qualified Immunity Appeals is Narrowly Limited to Abstract Legal Issues**

Limits on appellate court jurisdiction date back to the earliest days of the federal court system. Since the Judiciary Act of 1789, Congress has limited appeals as of rights in federal court to appeals from final decisions of the district courts. 28 U.S.C. § 1291; *see also Will v. United States*, 389 U.S. 90, 96 (1967) ("All our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court."). "[T]he final judgment rule serves several salutary purposes:

> It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. . . . The rule also serves the important purpose of promoting efficient judicial administration.

*Cunningham v. Hamilton County*, 527 U.S. 198, 203 (1999) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)); *see also Merrel Inc. v. Koller*, 472 U.S. 424, 436 (1985) ("Implicit in § 1291 is Congress' judgment that the district judge has primary responsibility to police the prejudgment tactics of litigants, and that the district judge can better exercise that responsibility if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings.").

A district court's conclusion that genuine disputes of material fact preclude summary judgment is not a final order and cannot be appealed under 28 U.S.C. § 1291. *See Oritz v. Jordan*, 562 U.S. 180, 188 (2011) (explaining that when summary judgment is denied because "the court of first instance determines that a 'genuine dispute as to [a] material fact' precludes

immediate entry of judgment as a matter of law," an appeal under 28 U.S.C. 1291 is never allowed) (citing Fed. R. Civ. P. 56(a)).

Instead, the only jurisdictional avenue to appeal a court's decision at summary judgment is the "collateral order doctrine" of *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546 (1949), which permits immediate appeal of an interlocutory order only when the order meets three "stringent" requirements: (1) the order conclusively determines the disputed question; (2) it resolves an important issue completely separate from the merits of the action; and (3) it is effectively unreviewable on appeal from a final judgment. *See Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867–68 (1994). *Cohen*'s collateral order doctrine is unquestionably narrow, *Will v. Hallock*, 546 U.S. 345, 350 (2006) ("[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope"), and the Supreme Court "ha[s] stressed that it must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered,'" *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) (quoting *Digital Equipment*, 511 U.S. at 868).

The Supreme Court in *Mitchell v. Forsyth* extended *Cohen*'s collateral-order doctrine to appeals from a district court's decision to deny qualified immunity at summary judgment. 472 U.S. at 525–30. While appeals from denials of qualified immunity meet *Cohen*'s requirements in large part, courts have recognized that "the *Cohen* framework breaks down if there is no separation between the merits of the underlying lawsuit and the subject matter of the collateral order being appealed. . . . The problem, as the [Supreme] Court has recognized, is that a great number of orders denying qualified immunity at the pretrial stage are linked closely to the merits of the plaintiff's claim." *Jones v. Clark*, 630 F.3d 677, 679 (2011).

To avoid this problem—and consistent with the final judgment rule's preeminence and the narrow scope of the collateral-order doctrine—the Supreme Court has drawn an unambiguous line: appellate jurisdiction in qualified immunity appeals is expressly limited to resolving "abstract issues of law." *Johnson*, 515 U.S. at 317. The Supreme Court has forbidden appellate courts in qualified immunity appeals from summary judgment from revisiting a lower court's decision about genuine disputes of fact or the sufficiency of evidence in the pretrial record. *Id.* at 313–20; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009) ("*Johnson* held that the collateral orders that are 'final' under Mitchell turn on 'abstract,' rather than 'fact-based,' issues of law."); *Mitchell*, 472 U.S. at 530 (1985) (denials of immunity at summary judgment are appealable only "to the extent that [the district court's decision] turns on an issue of law"); *Behrens*, 516 U.S. at 312-13 (appealable orders "resolve a dispute concerning an abstract issu[e] of law relating to qualified immunity . . . —typically, the issue whether the federal right allegedly infringed was clearly established").

The Supreme Court has never strayed from the rule set out in *Johnson*. The Fourth Circuit has consistently followed that rule as well, holding that it has jurisdiction in a qualified-immunity appeal only over abstract issues of law and cannot revisit a district court's determinations that genuine disputes in the summary judgment record require a trial. *Buonocore v. Harris*, 65 F.3d 347, 361 (4th Cir. 1995) (dismissing the defendants' appeal of district court's denial of summary judgment on qualified immunity grounds because "*Jones* unequivocally holds that an order denying summary judgment on qualified immunity grounds insofar as it determines whether the "pretrial record sets forth a 'genuine' issue of fact" is not immediately appealable."); *Winfield v. Bass*, 106 F.3d 525, 529–30 (4th Cir. 1997) (*en banc*) ("[W]e possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's

8

version of the facts actually occurred…"); *Culosi v. Bullock*, 596 F.3d 195, 198, 201 (4th Cir. 2010) ("Whether we agree or disagree with the district court's assessment of the record evidence on that issue, however, is of no moment in the context of this interlocutory appeal…we conclude that the order of the district court denying qualified immunity to Officer Bullock is not immediately appealable because the district court merely determined that genuine disputes of material fact existed….").

### 2. Mr. Black's Claims are Grounded in Undisputedly Established Law

In sum, not all summary judgment orders denying a defendant qualified immunity can be the subject of an interlocutory appeal. The Supreme Court has held that the Courts of Appeals have jurisdiction over interlocutory appeals from such orders only when the immunity determination turns on the legal issue of whether the plaintiff's federal right was clearly established. *Johnson v. Jones*, 515 U.S. 304, 317 (1995); *Behrens*, 516 U.S. 313. This Court's immunity determination did not depend on that legal issue. It turned on disputed facts.

To properly raise a qualified immunity argument, therefore, the Defendants must first accept the facts in the light most favorable to the plaintiff and then demonstrate that those facts do not make out the violation of a right that was clearly established at the time they acted. *Id*. However, that is not how Defendants chose to proceed. Instead, they argued that the evidence was insufficient to support Plaintiff's allegations, because, of course, the conduct Plaintiff alleges was clearly unconstitutional at the time that Defendants acted. Accordingly, Defendants have failed to preserve any purely legal argument for appeal, making any interlocutory appeal on such grounds frivolous. *See Hicks v. Ferreyra*, 965 F.3d 302, 305 (4th Cir. 2020) ("[O]ur well-established forfeiture rules govern here, and those rules do not allow the officers to raise before us a claim they never pressed in the district court.") (dismissing qualified immunity appeal for

lack of jurisdiction); *Haze v. Harrison*, 961 F.3d 654, 660 (4th Cir. 2020) ("Defendants argue that courts had not clearly established, at the time of the alleged constitutional violations, that legal mail must be opened in an inmate's presence. This directly contradicts Defendants' qualified immunity argument in the district court. . . . Accordingly, Defendants have forfeited the argument on appeal.") *Hicks v. Ferreyra*, 64 F.4th 156, 170 n.4 (2023) ("We decline to consider [the officers'] argument because it was not preserved below.") (appeal after trial). Without a preserved pure legal issue, the appeal cannot be anything but frivolous.

Moreover, even if Defendants had conceded Plaintiff's view of the facts and argued that the law was not settled as to those facts, that argument would be meritless. The Court was no doubt correct when it found that "[b]y 2007, it was clear a coerced confession and fabricated evidence could not form the basis of probable cause for an arrest or prosecution." *Id.* (citing *Gilliam*, 932 F.3d at 235 (discussing cases); *Washington v. Wilmore*, 407 F.3d 274, 282–84 (4th Cir. 2005) (same); *Ferguson*, 566 F.2d at 877 (same).

The touchstone of the clearly established prong is whether there was fair warning: Could the defendants reasonably have anticipated that their conduct was actionable? *See, e.g.*, *United States v. Lanier*, 520 U.S. 259 (1997). Decisions from the Supreme Court and Courts of Appeals inform whether a right was clearly established at the time of the wrongful conduct. *See, e.g.*, *Ward v. County of San Diego*, 791 F.2d 1329, 1332 (9th Cir. 1986), *cert. denied*, 483 U.S. 1020 (1987). The exact conduct at issue need not have been previously held unlawful. *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987). Mr. Black does not need to identify a case directly on point, or even a closely analogous case to show a right was clearly established. *Id.* He need only show that the contours of the federal right were sufficiently clear that a reasonable person would understand that their conduct might violate that right. *Id.*

10

As this Court recognized in deciding Defendants' motions for summary judgment, Mr. Black's coerced confession, malicious prosecution, due process, and failure to intervene theories are based on law that was clearly established long before the events in this case. Supreme Court and Fourth Circuit precedent uniformly support that conclusion. Indeed, Defendants did not raise challenges to the applicable law in their motions or notice of appeal, and any such challenge they might manufacture in response to this Motion would be frivolous.

First, there is no dispute that the constitutional right at issue in Mr. Black's coerced confession claim was clearly established long before his interrogation in 2007. *Ferguson v. Boyd*, 566 F.2d 873, 877 (4th Cir. 1977); *Gilliam v. Sealey*, 932 F.3d 216, 234–35 (4th Cir. 2019). The United States Constitution protects not just against false confessions, but against self-incrimination more generally, with the Fifth Amendment speaking in terms of being "compelled in any criminal case to be a witness against himself." U.S. Const. Am. V. That is exactly the allegation here. Viewing the facts in Mr. Black's favor, the Defendants fed Mr. Black facts he did not know (and which they had fabricated with Dement the previous night), wore him down, and ultimately threatened to revoke his parole if he did not falsely state that he was involved in the story fabricated the previous night.

In addition to Mr. Black's coerced confession theories, Mr. Black's right not to be maliciously prosecuted as a matter of federal constitutional law was also established long before the events at issue in this case. As the Supreme Court recently noted in *Manuel v. City of Joliet*, constitutional protections against detention without probable cause after the issuance of legal process "follow from settled precedent" established by the Supreme Court at latest in 1975. 127 S. Ct. 911, 914–15 (2017) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)).

Supreme Court cases stretching back nearly a century firmly establish that the fabrication of evidence violates due process. *Napue v. Illinois* pronounced: "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." 60 U.S. 264, 269 (1959) (collecting cases). *Napue* explained that "[t]he principle that a State may not knowingly use false evidence . . . to obtain a tainted conviction" is "implicit in any concept of ordered liberty[.]" *Id*.

*Napue* was itself grounded in a long line of due process cases that had prohibited the use of false information in criminal proceedings, a number of which illustrate that this constitutional prohibition extends to false evidence created by police officers. In *Pyle v. Kansas*, for example, a *pro se* defendant submitted post-conviction affidavits from witnesses who averred they had been "forced to give perjured testimony . . . under threat by local authorities at St. John, Kansas and the Kansas State Police." 317 U.S. 213, 215 (1942). These affidavits set forth "allegations that [Pyle's] imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction," and the Court found the "allegations sufficiently charge[d] a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle [Pyle] to release from his present custody." *Id.* at 216; *see also Brown v. Mississippi*, 297 U.S. 278, 283-85 (1936) (convictions based on evidence fabricated be sheriff's deputies violated due process); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (*per curiam*).

The Fourth Circuit consistently follows this line of cases. In *Gilliam v. Sealy*, the Fourth Circuit held that it was "clearly established in 1983" that an individual has a "constitutional right not to be deprived of liberty as a result of the fabrication of the evidence by an investigating officer." 932 F.3d at 234–35 (citation omitted). The coerced confession and fabrication claims proceeded to trial, where, as here, officers met with a witness who claimed not to know anything

12

about the crime, subjected him to a polygraph test, and marked him as a suspect, pressuring the witness to change his story and adopt the officers' theory of the case. *Id. Washington v. Wilmore* holds that in 1983, at latest, there was a "constitutional right not to be deprived of liberty as a result of the fabrication of evidence by an investigating officer." 407 F.3d 274, 283-84 (4th Cir. 2005); *see also Massey v. Ojaniit*, 759 F.3d 343, 354-56 (4th Cir. 2014). The same is true in every other court of appeals. These cases recognize that by 1983, it was clearly established that threatening a witness with the loss of liberty if he continues to claim ignorance of the crime constituted improper coercion and fabrication of evidence. *See, e.g.*, *Gilliam*, 932 F.3d at 234–35. Applied to this case, it was clearly established that threatening Mr. Black to change his story or else go back to prison could trigger liability.

Finally, Mr. Black's failure to intervene or bystander liability claim is dependent upon his other claims for violations of clearly established constitutional rights. ECF 69 at 16; *Hinkle v. City of Clarksburg*, 81 F.3d 416, 420 (4th Cir. 1996).

Accordingly, all the claims to be tried turn on factual disputes, based on well-established law. If a jury finds that Defendants took the actions Mr. Black claims, there can be no grounds for qualified immunity. The Court should grant Mr. Black's motion and certify the appeal as frivolous.

### 3. Alternatively, the Court Should Bifurcate and Try the State Law Claims

The case is ready for trial. More than ready, the witnesses are under subpoena and waiting to be told what to do. If the case is stayed and the Fourth Circuit, perhaps in a year or more, resolves the appeal for Mr. Black, the merits will not have changed, but the costs of litigation will have gone up, witnesses may become unavailable, memories will have faded, and justice will have been delayed.

If, on the other hand, the case is stayed and the Fourth Circuit resolves the appeal for Defendants based only on qualified immunity—the issue that purportedly justifies Defendants' appeal—the state law claims will still have to be tried. The trial will be identical to the trial that could take place next month, except probably for the loss of some witnesses and memories. If the Court declines to certify the appeal as frivolous, it should bifurcate and try the state law claims.

## CONCLUSION

In short, Defendants have not preserved an abstract legal challenge any such challenge would be meritless regardless. Thus, filing a notice of appeal is a meaningless act, it will not oust jurisdiction from this court. This Court should certify the appeal as frivolous and proceed to trial. Alternatively, the Court should bifurcate and try the state law claims.

Respectfully submitted,

**JUSTIN BLACK**

/s/ Lonnie C. Simmons

Lonnie C. Simmons (W.Va. I.D. No. 3406)
DIPIERO SIMMONS MCGINLEY & BASTRESS, PLLC
P.O. Box 1631
Charleston, West Virginia 25326
Phone: (304) 342-0133
Fax: (304) 342-4605
Lonnie.Simmons@dbdlawfirm.com
*Attorney for Plaintiff*

Julia Rickert, *Admitted Pro Hac Vice* (
Mike Kanovitz, *Admitted Pro Hac Vice*
Maria Makar, *Admitted Pro Hac Vice*
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902
makar@loevy.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that true and correct copies of the foregoing have been served via the Court's CM/ECF system on this day, October 4, 2023, to counsel of record for all parties.

/s/ Lonnie C. Simmons
Attorney for Justin Black
Lonnie C. Simmons (W.Va. I.D. No. 3406)
DIPIERO SIMMONS MCGINLEY &
BASTRESS, PLLC
P.O. Box 1631
Charleston, West Virginia 25326
Phone: (304) 342-0133
Fax: (304) 342-4605
Lonnie.Simmons@dbdlawfirm.com